**Affirmed and Opinion filed October 14, 2014.**



**In The**

# Fourteenth Court of Appeals

## NO. 14-13-00453-CR

**REGINALD RAY WASHINGTON, JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 268th District Court
Fort Bend County, Texas
Trial Court Cause No. 12-DCR-061413A**

## O P I N I O N

The State presented evidence that appellant Reginald Ray Washington, Jr. aided another man who opened fire on a crowd of people at a night-time social gathering; nearby, a child who was outside was struck by a bullet. A jury found appellant guilty of causing serious bodily injury to a child, and the trial court assessed punishment at thirty years' confinement. Appellant challenges his conviction in six issues. We affirm.

# I. BACKGROUND

According to eyewitness testimony, about a dozen people were socializing outside of a few houses in Richmond, Texas. A Buick and another car belonging to Harvey Garrett stopped by the houses, and Garrett was talking with someone about finding somebody else. The two cars made another pass, and then the Buick alone stopped near the houses. Three or four people armed with guns got out. One or more of them started shooting into the crowd of people. Multiple people were shot, including the child complainant, outside at another residence.

Patrick Robinson was playing dice outside when the shooting began. He testified that he saw four suspects with guns; he saw at least one pistol with a long clip, a regular pistol, and a rifle. Armon Moorer saw two people with guns; one was a rifle and the other was a pistol with a long clip. He heard eight to thirteen shots. Marciella Medina saw three suspects with guns. Medina testified that the driver pulled out a magnum-like pistol and fired three shots into the air, and the man with an AK-47 stole money from the dice game during the shooting. No witnesses from the party testified that they identified any of the suspects. One or more of the suspects were wearing ski masks.

After the shooting, the suspects got back in the Buick and drove away. Richmond Police Department Officer Larry Ganey was nearby, and he heard the gunfire. He drove towards it and learned that another police officer had spotted the Buick and was in pursuit. The Buick did not stop when the police activated lights and sirens. The Buick pulled into a Wal-Mart parking lot with multiple marked police vehicles in tow.

While the vehicle was still rolling, the driver—later identified as Timothy Chatmon—got out and ran. Officer Ganey pursued Chatmon on foot. Chatmon threw a pistol to the ground during the chase. Chatmon eluded Ganey and

2

carjacked a woman in the drive-thru line at a Whataburger. Another person near the Whataburger notified the police of the carjacking, and the police successfully stopped the vehicle after a chase. Chatmon was arrested. His .380 pistol was also recovered.

At about the same time Chatmon fled the Buick, a man—later identified as appellant—got out on the passenger's side and ran in the opposite direction. Sergeant Holly Horton chased appellant through the Wal-Mart parking lot and apprehended him. Meanwhile, the Buick continued to roll through the parking lot, and about twenty seconds after Chatmon and appellant fled, a third person got out of the Buick. This person was not apprehended.

A search of the vehicle revealed an AK-47 rifle, a TEC-9 pistol (with a long clip), ammunition, four ski masks, and gloves. The following morning, appellant gave a brief audio-recorded statement to an investigator. He claimed that he did not know the other men involved, he was not in the car, and he was at the Wal-Mart to buy an AT&T card. Appellant's hands were tested for gunshot residue. Two characteristic gunshot residue primer particles were found on his hand. This is consistent with the appellant having recently fired a weapon, been nearby a weapon when it was fired, or touched something with gunshot residue on it.

Jennifer Turner, a firearms expert at the Harris County Institute of Forensic Sciences, received a fired bullet fragment and four fired shell casings from the crime scene. All of the items matched the AK-47 rifle; none of them matched the TEC-9 or .380 pistol. Turner also testified that the TEC-9 did not consistently extract and eject cartridge cases, so cartridge cases could get stuck in the slide and could need to be removed manually. The bullet that struck the complainant remained inside his body at the time of trial.

Chatmon testified at appellant's trial as an accomplice witness. He testified that Eric Williams was the shooter wielding the AK-47 who later fled from the Buick and escaped detention by the police. Williams had a few verbal confrontations with a man named Lason or "Laylo," and Williams wanted revenge.[1] On the night of the shooting, Garrett told Williams that Laylo was at the party in Richmond. Before driving over to the houses, appellant "really didn't have too much conversation," and "Williams was the person doing all the talking, giving orders, stuff like that." According to Chatmon, Williams did not "go into detail of what was going to be done" that night, but Chatmon understood that Williams "wasn't going to let it go and by whatever means necessary." Chatmon testified that he and appellant "agreed to be there as back-up." Chatmon testified, "We understood that whatever it came to, the problem was going to get handled right then." Chatmon also testified, "The only discussion was [Williams] giving us orders, telling us — telling me and [appellant] that when we get there, that he going to take care of it, watch his back, make sure, you know, don't nobody sneak up behind him."

Chatmon testified that Williams and appellant were in the Buick before the shooting, and Chatmon had been dropped off near the party by Garrett. Chatmon also confirmed that the AK-47 and TEC-9 were in the Buick with Williams and appellant. During the shooting, Williams had the AK-47 and appellant had the TEC-9. Chatmon testified that appellant's gun was down, and he was not pointing it, but he was "wrestling" with it. Chatmon explained that appellant was having problems with the gun: "[L]ike he couldn't cock it. You know, couldn't cock it or pull something back or he was trying to work it, but he wasn't — as far as trying to fire it, I didn't see him trying to fire the gun . . . ." Chatmon never saw appellant

---

[1] Appellant had not been present during those confrontations.

4

actually fire the gun. Chatmon testified that he knew for sure only the AK-47 was fired at the scene. Chatmon also testified that appellant jumped over a drainage ditch to steal money from the dice game.

Appellant, Williams, and Chatmon piled back into the Buick; appellant sat in the back seat. Williams passed the AK-47 to appellant, and appellant wiped it down with a shirt. Chatmon also testified about the police pursuit and how he came into custody. Finally, Chatmon testified about a conversation he had with appellant while the two were incarcerated. Appellant had asked Chatmon to testify that appellant had not jumped the drainage ditch, and appellant told Chatmon he did not wipe down the gun or know how gunshot residue got on his hand. Appellant tried to convince Chatmon that appellant never had a gun in his hand.

The jury charge authorized appellant's conviction under a principal theory or as a party to the offense. The jury found appellant guilty, and the trial court assessed punishment at thirty years' confinement.

## II.    ACCOMPLICE WITNESS CORROBORATION

In his first issue, appellant contends the evidence is insufficient to corroborate the testimony of the accomplice witness, Chatmon. We disagree.

"Under Article 38.14 of the Texas Code of Criminal Procedure, a defendant may not be convicted of an offense upon the testimony of an accomplice without other corroborating evidence 'tending to connect' the defendant to the offense." *Simmons v. State*, 282 S.W.3d 504, 505 (Tex. Crim. App. 2009).[2] To determine whether non-accomplice evidence tends to connect a defendant to the offense,

---

[2] *See also* Tex. Code Crim. Proc. Ann. art. 38.14 ("A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense.").

"'the evidence must simply link the accused in some way to the commission of the crime and show that rational jurors could conclude that this evidence sufficiently tended to connect [the accused] to the offense.'" *Id.* at 508 (quoting *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008)). We eliminate the accomplice testimony from consideration and consider only the non-accomplice evidence. *See Malone*, 253 S.W.3d at 257. We must consider the combined force of all the non-accomplice evidence. *Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011). When there are two permissible views of the evidence—one that tends to connect the accused to the offense and one that does not—we must defer to the jury's resolution. *Id.* (citing *Simmons*, 282 S.W.3d at 508).

A defendant's mere presence at the crime scene is insufficient to corroborate accomplice testimony. *Malone*, 253 S.W.3d at 257. However, "'[p]roof that the accused was at or near the scene of the crime at or about the time of its commission, when coupled with other suspicious circumstances, may tend to connect the accused to the crime so as to furnish sufficient corroboration to support a conviction.'" *Id.* (quoting *Brown v. State*, 672 S.W.2d 487, 489 (Tex. Crim. App. 1984)). The corroborating evidence, of course, "need not prove the defendant's guilt beyond a reasonable doubt by itself." *Id.*

Appellant was in the back seat of a vehicle being driven by the accomplice away from the crime scene shortly after the commission of the crime. Thus, he was clearly near the scene of the crime at or about the time of its commission. *See id.* Police observed appellant flee from the vehicle, and he attempted to flee from police. *See Hardesty v. State*, 656 S.W.2d 73, 77–78 (Tex. Crim. App. 1983) (flight or attempt to avoid police apprehension is a circumstance of guilt). When caught, he lied to the police that he did not know the other suspects, had not been in the car with them, and had just been shopping at Wal-Mart for an AT&T card.

6

*See Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004) (inconsistent statements, implausible explanations to the police, and "[l]ies about an actor's relationship with an accomplice are probative of unlawful acts").[3] Further, two characteristic gunshot residue primer particles were discovered on appellant's hand, which is consistent with a reasonable inference that he fired a gun. *See Sturdivant v. State*, No. 01-12-00089-CR, — S.W.3d —, 2013 WL 1972179, at *9 (Tex. App.—Houston [1st Dist.] May 14, 2013), *rev'd on other grounds*, 411 S.W.3d 487 (Tex. Crim. App.).

Officer Ganey's dashboard camera showed three people exit the Buick after it slowed in the Wal-Mart parking lot. Medina testified that she saw three suspects at the crime scene, and all three had guns. Chatmon's gun was discovered after he threw it to the ground while running from Officer Ganey. Two other guns, a TEC-9 and an AK-47 described by witnesses at the crime scene, were found in the back seat of the vehicle where appellant had been sitting. Eyewitness testimony linked both of these types of guns to the crime scene, and expert testimony linked the AK-47 to the crime scene. *See Palomo v. State*, 352 S.W.3d 87, 90 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (the defendant's possession of a weapon linked to the crime soon after the crime and the defendant's having access to the location where the police discovered the weapon was a circumstance of the defendant's guilt). The police also found masks in the vehicle, which was

---

[3] The jury could have found that appellant lied because Sergeant Horton testified that appellant exited the vehicle and that she chased him, ultimately detaining him. Further, appellant's counsel acknowledged during closing argument, while urging the jury to disregard Chatmon's testimony and consider only the non-accomplice evidence, that appellant had lied to the police and was present during the shooting: "[I]f you don't believe what [Chatmon] says, what you're left with is practically nothing. What you're left with is some gunshot residue on [appellant]'s hands, and you're left with the fact that he had lied to an investigator because he had just seen this Eric Williams guy — I guess his distant cousin or whatever — shoot into a crowd of people."

7

consistent with eyewitness testimony that at least one of the suspects was wearing a mask.

In sum, without considering the accomplice witness testimony, there was evidence that (1) there were at least three gunmen and three people in the Buick, one of whom was appellant; (2) appellant was sitting in the back seat of a vehicle with two guns that were linked to the crime; (3) appellant fled from the police, (4) appellant lied to the police about his presence in the vehicle and association with the accomplices; and (5) appellant had particles consistent with gunshot residue on his hand, which allowed the jury to infer that he fired a gun. This evidence tended to connect appellant to the offense, and there was more than mere evidence of appellant's close proximity to the crime scene and the accomplice.

Appellant's first issue is overruled.

### III. SUFFICIENCY OF THE EVIDENCE: PARTY LIABILITY

In his second issue, appellant contends the evidence is insufficient to support his conviction under the law of parties. We disagree.

A person is a criminally responsible party to an offense "if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." Tex. Penal Code Ann. § 7.01. A person is criminally responsible for the conduct of another if, acting "with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." *Id.* § 7.02.

To determine whether an individual is a party to an offense, the reviewing court may look to events before, during, and after the commission of the offense. *Gross v. State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012). There must be sufficient evidence of an understanding and common design to commit the offense.

8

*Id.* Evidence may be direct or circumstantial. *See id.* Each fact need not point directly to the guilt of the defendant, as long as the cumulative effect of the facts are sufficient to support the conviction under the law of parties. *Id.* However, the mere presence of a person at the scene of a crime, or even flight therefrom, without more, is insufficient to support a conviction as a party to the offense. *Id.*

We must view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* We defer to the jury's responsibility to fairly resolve or reconcile conflicts in the evidence, and we draw all reasonable inferences from the evidence in favor of the verdict. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

Appellant was found guilty of causing serious bodily injury to a child. *See* Tex. Penal Code Ann. § 22.04. He does not dispute that the crime occurred, but he contends there is insufficient evidence that he "acted together" with Williams or Chatmon or "contributed in some part towards the execution of the common purpose." In reviewing the sufficiency of the evidence, we may consider Chatmon's testimony in addition to the evidence discussed above under appellant's first issue. Chatmon testified that appellant was present with Williams before the offense, and Williams was "giving orders." Chatmon and appellant understood that "whatever it came to, the problem was going to get handled right then." Chatmon testified that appellant "agreed to be there as back-up." Williams told Chatmon and appellant that they needed to watch his back and make sure nobody snuck up on him. Further, appellant was riding in the Buick with Williams before the shooting started. The AK-47 and TEC-9 were in the Buick before the shooting.

Then, immediately before or during the shooting, appellant exited the Buick with a TEC-9 in his hands. He jumped over the drainage ditch to where people had

9

been playing dice, and he stole money from the table.[4] Chatmon also testified that appellant was having problems with the TEC-9 and "was trying to work it," but Chatmon did not see appellant fire the gun. Robinson testified that all of the men who exited the Buick had guns. During the getaway, appellant wiped down Williams's AK-47 with his shirt. And later, while both Chatmon and appellant were incarcerated, appellant tried to get Chatmon to say that appellant never had a gun.

On appeal, appellant asks this court to "strongly discount Timothy Chatmon's testimony because it is unreliable." However, as the "sole judge of the weight and credibility of the evidence," the jury was entitled to believe Chatmon's testimony. *See Johnson v. State*, 42 S.W.3d 893, 896 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Chatmon's testimony supplied the jury with evidence of appellant's attempt to aid Williams to commit the offense with the intent to promote or assist the commission of the offense. In particular, there was evidence that appellant exited the Buick with a gun to serve as back-up for Williams, and appellant helped Williams by wiping down the AK-47. Further, Chatmon's testimony that appellant was struggling with the TEC-9, coupled with evidence that the TEC-9 jammed while ejecting cartridges and the particles consistent with gunshot residue on appellant's hands, would have enabled a rational jury to infer that appellant actually shot the TEC-9 in furtherance of the commission of the crime. A rational jury could have found beyond a reasonable doubt that appellant acted with a common design or understanding to commit the offense.

Appellant's second issue is overruled.

---

[4] There was some conflicting evidence about whether it was appellant or Williams who stole the money from the table, but we must view the evidence in the light most favorable to the verdict and resolve conflicts in favor the verdict. *See Gross*, 380 S.W.3d at 186; *Isassi*, 330 S.W.3d at 638. Regardless of whether appellant stole money from the dice game, our holding would be the same.

# IV. ADMISSION OF EVIDENCE

In his fourth issue, appellant contends the trial court erroneously admitted irrelevant testimony from Chatmon. In particular, Chatmon testified that while incarcerated with appellant, appellant told Chatmon "that the State didn't have anything, that the evidence was, you know, weak, that they didn't have nothing." The State contends appellant failed to preserve error. Appellant urges that he preserved error because counsel "objected that this evidence was irrelevant at the first offering of this particular line of testimony." We agree with the State that appellant did not preserve error.

The State questioned Chatmon as follows:

Q.        Have you had discussion with the defendant since you've been incarcerated?

A.        Yes, sir.

Q.        Tell me about it. What is the —

[Defense]:  Objection, your Honor. This is also hearsay.

[State]:    The defendant's statement.

The Court:  Overruled.

Q.        When was the first time you had —

[Defense]:  Objection, your Honor, as to relevance as well.

The Court:  As to relevance. I mean, the question is discussions, and I think what his objection is, what's the relevance of these discussions.

[State]:    I should have been more specific in my question. My question will be as to Mr. Washington, what discussion have you had with the defendant as it relates to the shooting.

The Court:  All right.

Q.        Let's start from the beginning.

The Court:  Overruled.

11

The State asked Chatmon four more questions without objection from defense counsel. Then, the testimony continued as follows:

Q.         What did [appellant] say?

A.         That —

[Defense]:  Objection, your Honor; hearsay.

The Court:  Overruled.

A.         That the State didn't have anything, that the evidence was, you know, weak, that they didn't have nothing, and tried to detour me to think that he — you know, what I saw.

[Defense]:  Objection, your Honor; nonresponsive.

The Court:  Sustained. Question and answer.

Q.         Okay.

The State's examination continued. Defense counsel did not again object based on relevance.

To preserve error for review, an appellant must make a timely and specific objection. *Lopez v. State*, 253 S.W.3d 680, 684 (Tex. Crim. App. 2008) (citing Tex. R. App. P. 33.1). "Moreover, an objection must be made each time inadmissible evidence is offered unless the complaining party obtains a running objection or obtains a ruling on his complaint in a hearing outside the presence of the jury." *Id.* And, a complaint on appeal must comport with the objection made at trial. *Bekendam v. State*, No. PD-0452-13, — S.W.3d —, 2014 WL 4627275, at *4 (Tex. Crim. App. Sept. 17, 2014).

Appellant objected to one question based on relevance but did not request a running objection to the line of testimony. Later, when the State elicited the complained-of testimony, appellant's only objections were "hearsay" and "nonresponsive." These objections were not sufficient to preserve an appellate complaint about relevance. Accordingly, appellant failed to preserve error.

12

Appellant's fourth issue is overruled.

## V.   JURY CHARGE ERRORS

In his third, fifth, and sixth issues, appellant contends he was harmed by errors in the jury charge. We will review general principles related to jury charge error and then address each of his contentions. Ultimately, we hold that appellant did not suffer harm from any of the alleged errors.

We review alleged charge error by considering two questions: (1) whether error existed in the charge; and (2) whether sufficient harm resulted from the error to compel reversal. *Ngo v. State*, 175 S.W.3d 738, 744 (Tex. Crim. App. 2005). The degree of harm necessary for reversal under the second inquiry depends on whether the appellant preserved the error. *Id.* at 743. If the appellant objected to the charge, we will reverse if there is "some harm." *Id.* If the appellant failed to object, we will reverse only if there is "egregious harm." *Id.* at 743–44.

Errors that meet the "high and difficult standard"[5] of causing egregious harm are those that "affect the very basis of the case, deprive the defendant of a valuable right, or vitally affect a defensive theory." *Ngo*, 175 S.W.3d at 750 (quotations omitted). The some harm standard is less stringent and asks whether the error was "calculated to injure the rights of the defendant." *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013) (quotation omitted). But under either harm analysis, the appellant must have suffered some actual, rather than merely theoretical, harm. *See id.* In assessing harm, we must consider the entire record, including "(1) the jury charge as a whole, (2) the arguments of counsel, (3) the entirety of the evidence, and (4) other relevant factors present in the record." *Id.*

---

[5] *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013).

## A. Principal Liability

In his third issue, appellant contends that the trial court reversibly erred because the jury charge authorized appellant's conviction as a principal actor despite insufficient evidence to support that instruction. *See Watson v. State*, 693 S.W.2d 938, 940 (Tex. Crim. App. 1985) (error to charge jury on theory that the defendant was acting alone when there is no evidence to support a conviction on that theory). The State contends that there was sufficient evidence for the jury to convict appellant as a principal, but regardless, any error was harmless.

Assuming without deciding that it was error to include a principal liability instruction in the jury charge, we hold that appellant did not suffer any harm. Because appellant objected to this aspect of the charge, we will review the entire record for some harm.

"When a charge authorizes a jury to convict a defendant as a principal or a party and the evidence establishes the defendant's guilt only as a party, error in submitting the defendant's guilt as a principal is harmless under the *Almanza* standard." *Payne v. State*, 194 S.W.3d 689, 698 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). When the evidence clearly supports a defendant's guilt as a party, and the State relied fervently on that theory in closing arguments, any error of the trial court in charging the jury about guilt as a principal is likely harmless. *Cf. Ladd v. State*, 3 S.W.3d 547, 564–65 (Tex. Crim. App. 1999) (harmless to submit law of parties when evidence clearly supports guilt as principal); *Teague v. State*, 864 S.W.2d 505, 517–18 (Tex. Crim. App. 1993) (harmless to fail to apply law of parties in application paragraph when guilt as primary actor is "best supported by the overwhelming evidence and most fervently advanced by the State in closing arguments"), *overruled on other grounds by Robertson v. State*, 871 S.W.2d 701, 712 n.13 (Tex. Crim. App. 1993).

Here, the evidence most strongly supports appellant's guilt as a party. Indeed, the State's witnesses, including accomplice Chatmon, did not testify that appellant fired a weapon.[6] No ballistics evidence from the crime scene was tied to the TEC-9; all of it was tied to the AK-47 allegedly wielded by Williams. Further, the party theory was most fervently advanced by the State in closing arguments. The State referred to the law of parties paragraph as "the key paragraph" and reiterated, "This is a parties case." And of course, defense counsel argued that the principal actor paragraph "doesn't even apply . . . . The only evidence that you've heard that might possibly be construed as some evidence of guilt is if he was doing it as a party because there's just zero evidence that he did it on his own, acting alone."

Finally, in assessing harm, we may also review the jury's questions asked during deliberations. *See Render v. State*, 316 S.W.3d 846, 853–54 (Tex. App.—Dallas 2010, pet. ref'd) (reviewing jury notes to determine harm from charge error); *Gomez v. State*, No. 14-11-00659-CR, 2012 WL 6162349, at *6 (Tex. App.—Houston [14th Dist.] Dec. 11, 2012, no pet.) (mem. op., not designated for publication) (same). We note that the jury apparently considered principal liability but likely did not find the evidence sufficient for a conviction on that theory because the jury sent a question while deliberating: "Has the bullet in [the child] been identified as coming from one of the firearms in evidence?" The trial court

---

[6] The State cites testimony from Robinson and Medina for the contention that there was "testimony that all of the people who came out of the Buick were firing weapons, which necessarily would include appellant." However, although Robinson referred to the suspects getting out of the Buick and said "they started shooting," he later clarified that he did not see any of the suspects actually firing a gun. Medina testified that all the suspects had guns, not that they all fired their weapons. Chatmon testified that the only gun fired was the AK-47 wielded by Williams. The best evidence on point was that appellant had particles consistent with gunshot residue on his hand, coupled with the fact that he was "struggling" with the jammed TEC-9, thus raising an inference that he shot the weapon. But there is no direct evidence that appellant shot "at the child victim," as the State alleges (without citation to the record).

15

responded that it could not answer the question. But the question itself suggests that the jury wanted to link the bullet to a particular gun to determine who was the principal actor. Without any evidence linking the bullet to appellant's gun, the jury likely relied on party liability. Indeed, the jury's other note asked whether all the elements of the charged offense would be considered proven if the jury found that appellant "aided or attempted to aid in the crime and thereby is criminally responsible."

After reviewing the entire record, including the evidence and arguments of counsel, we hold that appellant would not have suffered some harm as a result of an erroneously submitted instruction on principal liability.

Appellant's third issue is overruled.

## B.     Modes of Party Liability

In his fifth issue, appellant contends the trial court reversibly erred by denying appellant's request to limit the party liability application paragraph to the specific modes of party liability supported by the evidence. Appellant objected to the original charge that included all the modes of party liability—solicited, encouraged, directed, aided, or attempted to aid, *see* Tex. Penal Code Ann. § 7.02(a)(2)—and requested that the charge include only "attempted to aid."[7] The trial court removed only "solicited" from the application paragraph, so the charge authorized a conviction if appellant "encouraged, directed, aided, or attempted to aid" either Williams or Chatmon.[8]

---

[7] The State contends appellant did not preserve error regarding "aid" because appellant initially objected only to "solicited, encouraged, or directed." The State, however, ignores appellant's later clear request that "aided" be removed and only "attempted to aid" remain in the charge. We hold this request was sufficient to preserve error regarding "aided."

[8] The trial court recognized its duty to limit the charge to the specific modes of party liability supported by the evidence, and the court initially suggested that "directed" and

16

As the Court of Criminal Appeals recently reiterated, if a defendant requests "that the application paragraph refer only to those specific party-liability acts that are supported by the evidence, then he is entitled to such a narrowing." *Vasquez v. State*, 389 S.W.3d 361, 368 (Tex. Crim. App. 2012). The court defined the "statutory modes of conduct that constitute party liability" as "solicited, encouraged, directed, aided or attempted to aid." *Id.* "The failure to narrow the specific modes of party-liability conduct when properly requested is reversible error if the defendant has suffered actual harm to his rights." *Id.*

To determine whether appellant suffered any harm, we must determine exactly what the error was in this charge, if any.

### 1. Error

The modes for party liability are not statutorily defined, and neither appellant nor the State have suggested definitions or directed the court to any authority purporting to explain the differences between the terms. *Vasquez v. State*, however, provides an example. There, the court reasoned that a reasonable juror could infer that the appellant solicited, encouraged, or directed two other individuals to commit a robbery because he "told them that he needed money for his sick son" and he acted as the getaway driver "after the threesome hatched the robbery scheme the night before." *Id.* at 371. And, a reasonable juror "certainly could have concluded that appellant 'aided' or 'attempted to aid' his roommates in carrying out that robbery scheme by acting as the getaway driver." *Id.*

Similar to *Vasquez*, appellant's conduct of exiting the Buick with a gun, firing the gun, trying to get the gun to work, crossing the drainage ditch toward the

---

"solicited" should be omitted, and possibly "encouraged" because "[t]here's no direct testimony of him encouraging anything." The State argued that all the statutory terms "mean the same thing" but eventually agreed that "solicited" could be removed.

crowd, serving as "back up," and wiping down the AK-47 would have enabled the jury to conclude that appellant aided or attempted to aid in the commission of the offense. But what about "encouraged" or "directed"? There does not appear to be evidence in this record that appellant had the motivation for shooting at the party or hatched the scheme, like in *Vasquez*. Chatmon testified that appellant "really didn't have too much conversation" before the incident, and "Williams was the person doing all the talking, giving orders, stuff like that." Chatmon testified that Williams "was the person that done the act, that pulled the trigger." Appellant had not been present when Williams and Laylo had any of their prior altercations, and it was Williams who wanted to know where Laylo was to "get revenge." Thus, appellant's level of involvement appears to be lower than in *Vasquez*.

*Vasquez* does not provide the only guidance, however. "[T]erms not legislatively defined are typically to be understood as ordinary usage allows, and jurors may thus give them any meaning which is acceptable in common parlance." *Medford v. State*, 13 S.W.3d 769, 771–72 (Tex. Crim. App. 2000). We may look to a dictionary to determine common usage. *See, e.g.*, *Clinton v. State*, 354 S.W.3d 795, 800 (Tex. Crim. App. 2011) (assessing sufficiency of the evidence based on dictionary definitions); *Ramos v. State*, 303 S.W.3d 302, 307 (Tex. Crim. App. 2009) (same; referring to a dictionary to determine "common usage").

As appears relevant here, Webster's Third New International Dictionary[9] defines "direct" as "to regulate the activities or course of; to guide and supervise; to carry out the organizing, energizing, and supervising of esp. in an authoritative capacity; to dominate and determine the course of." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 640 (1993). Webster's defines "encourage" as "to

---

[9] We refer to this dictionary because it is "among the most commonly used." *Clinton*, 354 S.W.3d at 800 n.2.

18

give courage to; inspire with courage, spirit, or hope; to spur on."[10]  *Id.* at 747. Under these definitions, the modes "directed" and "encouraged" are not supported by the evidence in this case.  There is no evidence that appellant directed or encouraged Williams or Chatmon to commit the offense.

Accordingly, the trial court did not err by including "aided" in the jury charge, but the court erred by including "directed" and "encouraged."

### 2. *Harm*

We now consider the entire record to determine if appellant suffered some actual harm.  The evidence of appellant's aiding or attempting to aid Williams was strong.  Multiple witnesses observed the suspects with guns, and Chatmon testified that appellant had the TEC-9 and was trying to get it to work.  Chatmon testified that appellant wiped down the AK-47, which explains how appellant could have gotten gunshot residue on his hands even if he did not fire the TEC-9.  Then, appellant fled from the police and lied to an investigator concerning his relationship with Chatmon and Williams.  The fact that the law of parties was the "focus of the evidence" generally weighs in favor of finding the error harmless. *See Vasquez*, 389 S.W.3d at 372 (harmless when the error was the trial court's failure to repeat all of the statutory modes in the application paragraph).

---

[10] Another definition of "encourage" is "to give help or patronage to," but this definition would be synonymous with Webster's definition of "aid"—"to give help or support to." *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 44.  We decline to use this definition of "encourage" because to do so would render at least one of the statute's terms mere surplusage. *State v. Shumake*, 199 S.W.3d 279, 287 (Tex. 2006) ("In construing a statute, we give effect to all its words and, if possible, do not treat any statutory language as mere surplusage."); *see also Cook v. State*, 902 S.W.2d 471, 478 (Tex. Crim. App. 1995) ("[C]ourts should avoid a construction (of constitutional provisions) which renders any provision meaningless or inoperative and must lean in favor of a construction which will render every word operative, rather than one which may make some words idle and nugatory." (quotation omitted)).  We do not agree with the State's suggestion that all the terms in Section 7.02(a)(2) have identical meaning.  Indeed, because a defendant is entitled to a limiting of the charge to specific modes supported by the evidence, each term must have a different meaning.

Despite this strong evidence that appellant aided or attempted to aid another in committing the offense, the State's closing argument muddied the waters. In discussing the law for parties, the State said, "That if they touch — or if they participate or encourage or solicit — Do you see all those words down there? Then what it makes them, if it makes — this guy is responsible for what I do or her [sic] is responsible for what I do if I'm the one who actually pulls the trigger in that particular instance." After arguing that appellant was present during the shooting, had a gun, and "could have been shooting," the State urged that "they're all guilty as participating and encouraging and abetting one another, and they're all guilty." The State said, "They all rode together, and they all sit together in the judgment seat," and, "That's the law of parties in a nutshell, and that's the key paragraph." Accordingly, the State twice referred to the "encouraged" mode and referred to "solicit" although that mode had been removed from the application paragraphs. The State also referred to "participate" twice and "abetting" once, although those words do not appear in the jury charge. The fact that the law of parties was not "correctly argued" weighs in favor of finding harm. *Cf. id.* (harm unlikely because the law of parties was "correctly argued" by counsel).

Similarly, the remainder of the jury charge had the potential to confuse or mislead the jury because the law of parties definition was not limited in the abstract section. Although the trial court removed "solicited" from the application paragraphs, the word remained in the abstract section, along with the modes— directed and encouraged—for which there was no record support. This factor weighs in favor of finding harm. *Cf. id.* (harm from omitting modes from application paragraph was lessened because law of parties was correctly defined in the abstract section; noting that there was nothing in the record indicating that the jury was confused or misled).

20

It appears, however, that the jury focused its attention on the modes of "aided" or "attempted to aid." A note from the jury during deliberations asked, "If we find that [appellant] aided or attempted to aid in the crime and thereby is criminally responsible, does that satisfy that all elements of the offense charged been [sic] proven?" Use of the phrase "aided or attempted to aid" by itself, without reference to any other modes, suggests the jury did not believe that appellant "directed" or "encouraged" the offense. Thus, appellant would not have suffered any actual harm by the inclusion of those modes in the charge. This note strongly suggests the jury was not misled by the inclusion of "directed" or "encouraged" in the application paragraphs.

On balance, we cannot conclude that the error in this charge was calculated to injure appellant's rights. There was no actual—rather than merely theoretical—harm to appellant.

Appellant's fifth issue is overruled.

## C. Jailhouse Testimony

In his sixth issue, appellant contends the trial court reversibly erred by denying appellant's request for a jailhouse witness instruction, which generally mirrors the accomplice witness corroboration instruction, because of Chatmon's testimony about appellant's statements made while the two were incarcerated.[11] The State contends that appellant was not entitled to the instruction because appellant's statements to Chatmon were not incriminating and therefore not "against the defendant's interest." Regardless, the State contends appellant did not

---

[11] *See* Tex. Code Crim. Proc. Ann. art. 38.075(a) ("A defendant may not be convicted of an offense on the testimony of a person to whom the defendant made a statement against the defendant's interest during a time when the person was imprisoned or confined in the same correctional facility as the defendant unless the testimony is corroborated by other evidence tending to connect the defendant with the offense committed.").

21

suffer any harm.[12]  Assuming without deciding that appellant was entitled to the requested instruction,[13] we hold that appellant did not suffer some actual harm.

First, and most importantly in this case, we note that Chatmon was an accomplice witness, and the jury charge included an accomplice witness instruction requiring corroboration of his testimony:

> Upon the law of accomplice witness testimony, you are instructed that Timothy Chatmon was an accomplice, if any offense was committed, as alleged in the indictment.  With this in mind, you are further instructed that you cannot convict the Defendant upon Timothy Chatmon's testimony, unless you first believe that his testimony is true and shows the guilt of the Defendant as charged in the indictment, and then ***you cannot convict the Defendant unless Timothy Chatmon's testimony is corroborated by other evidence outside of the testimony of Timothy Chatmon tending to connect the Defendant with the offense charged***, if you find that an offense was committed, and the corroboration is not sufficient if it merely shows the commission of an offense, but it must tend to connect the Defendant with its commission, and then from all the evidence, you must believe beyond a reasonable doubt that the Defendant is guilty of the offense charged against him.  (emphasis added)

This instruction did not limit the corroboration requirement to Chatmon's non-jailhouse testimony.  Accordingly, it applied to all of Chatmon's testimony, including the jailhouse testimony.  Thus, appellant essentially received the benefit of the jailhouse witness instruction through the accomplice witness instruction.

---

[12] The State suggests we apply an "egregious" harm analysis because trial counsel "agreed" with the trial court that appellant's statements were not against his interest.  We need not resolve this issue because appellant cannot meet even the "some" harm standard in this case.

[13] *Compare Phillips v. State*, 436 S.W.3d 333, 337 (Tex. App.—Waco 2014, pet. granted) (defendant's attempts to have witnesses give false testimony were not against interest so defendant was not entitled to Article 38.075 instruction), *with id.* at 343–44 (Gray, C.J., concurring) (would hold that the defendant was entitled to instruction but suffered no harm).

Further, the purpose of an Article 38.075 instruction is to inform the jury that it cannot use the jailhouse witness's testimony unless there is independent evidence tending to connect the defendant to the offense. *Brooks v. State*, 357 S.W.3d 777, 781 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd). "Once it is determined that such . . . evidence exists, the purpose of the instruction is fulfilled, and the instruction plays no further role in the factfinders' decision-making." *Id.* (quotation omitted). So, "the existence of corroborating evidence 'tending to connect' appellant to the offense can 'render harmless' the trial court's failure to submit an article 38.075 instruction by fulfilling the purpose that such an instruction is designed to serve." *Id.* at 781–82. We reviewed the non-Chatmon evidence tending to connect appellant to the offense above when addressing appellant's first issue. As discussed above, the non-Chatmon evidence in this case tends to connect appellant to the offense: there was evidence that (1) there were at least three gunmen and three people in the Buick, one of whom was appellant; (2) appellant was sitting in the back seat of a vehicle with two guns that were linked to the crime; (3) appellant fled from the police, (4) appellant lied to the police about his presence in the vehicle and association with the accomplices; and (5) appellant had particles consistent with gunshot residue on his hand, which allowed the jury to infer that he fired a gun.

Finally, we note that Chatmon's jailhouse testimony was never mentioned during closing arguments. And, when discussing the accomplice witness corroboration requirement, the State explained the rationale of the rule: "Texas doesn't want us to be able to convict somebody off the testimony of some convict unless you at least have some evidence that corroborates that, that that took place independent of what I said." By using the word "convict" instead of "accomplice," it would have been clear to the jury that the corroboration requirement applied not

23

only to Chatmon's testimony concerning the events of September 1, but also to the testimony about statements appellant made to Chatmon while the two were incarcerated.

In conclusion, appellant did not suffer some harm. Appellant's sixth issue is overruled.

## VI. CONCLUSION

Having overruled all of appellant's issues, we affirm the trial court's judgment.


/s/          Sharon McCally
                         Justice

Panel consists of Justices McCally, Brown, and Wise.

Publish — Tex. R. App. P. 47.2(b).