

# NUMBER 13-20-00022-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

CAROLE HERNANDEZ DEANDA,                                          Appellant,

v.

THE STATE OF TEXAS,                                              Appellee.

### On appeal from the 36th District Court
### of San Patricio County, Texas.

# MEMORANDUM OPINION

### Before Justices Benavides, Hinojosa, and Silva
### Memorandum Opinion by Justice Silva

Appellant Carole Hernandez Deanda appeals her conviction of burglary of a building, a state jail felony offense. *See* TEX. PENAL CODE ANN. § 30.02(a)(1). By a single issue, Deanda argues the evidence was legally insufficient to sustain her conviction. We affirm.

# I. BACKGROUND

On January 14, 2019, Deanda and Petra Paz were arrested for burglary of a building for their alleged involvement in the theft of a water heater. Deanda was indicted on May 14, 2019, pleaded not guilty, and the case proceeded to a bench trial.

At trial, Eugene Smith Jr. and his wife Martha Smith testified that they live on a five-acre property in San Patricio County. According to Eugene, the property comprised of "one house in the back" and "three rent houses in the front." A driveway ran "straight [between] the middle of the rent houses."

Eugene and Martha were returning home on January 14, when they observed a "big black car parked in the driveway" next to one of the rental houses. Eugene testified that there were two women in the vehicle, and one of the women he spoke with said she was there to inquire about renting an available unit. Eugene testified, "As I was talking to them, I noticed . . . the little Toyota pickup [truck], backed under the carport behind the house." Eugene said he went to the back of the house and saw four people near the truck. Eugene recognized one of the individuals as Deanda and identified Deanda in the courtroom. Eugene said Deanda had been on his property "approximately two weeks before" to tour the rental unit. "I showed them the entire house[,] and I showed them where the water heater [was]—because that's also where the washer and dryer goes." Eugene asked Deanda what she was doing back on his property, and Deanda replied that she "was looking at—at the house, again, to possibly rent it." Eugene asked them to leave, and he returned to his vehicle which was parked in front of the black car. Eugene said, at that point, he watched the truck come out into the driveway and heard Martha say, "There's your water heater[] in the back of that truck."

2

Eugene immediately drove into the carport area and walked around to the side utility building. "I saw that the door was messed up on—on that little storeroom[,] and I went inside[,] and I saw that the water heater was missing." Eugene returned to his vehicle and attempted to locate the truck while Martha called 9-1-1. Eugene testified that he caught up to the truck about a mile away and "pulled [his] truck sideways in front of them." Eugene identified Deanda as the driver of the truck, and she had one passenger, later identified as Paz. According to Eugene, the following exchange occurred:

> [Deanda] said, "I will bring the water heater back to your house. I don't—" and I said, "No." And then she—I said, "There was—another car was in front of you." She said, "If you'll follow me, I will take you to that other car." I'm like, "No, I'm not going anywhere." I said, "We're waiting here for the police."

Eugene testified that Deanda stayed for a few minutes until the passenger said, "Let's get the 'H' out of here," and then drove about "50 yards" before Eugene was able to pull up in front of their vehicle again. Law enforcement arrived shortly after.

Martha testified she saw her husband walk over to the truck parked in the carport but did not hear the exchange. After her husband returned to their vehicle, Martha saw the truck drive past them and noticed their water heater in the truck bed. Eugene then confirmed their water heater was missing from the rental unit and instructed Martha to call 9-1-1. The 9-1-1 recording was admitted into evidence, and Martha can be heard giving the operator a description of the vehicle, including the license plate number, and explaining they had just witnessed their water heater get stolen. Martha, like Eugene, testified she saw Deanda tour the rental property two weeks prior. Unlike Eugene, Martha recalled hearing Deanda say, while they were waiting for law enforcement, that she had picked up the water heater as "a favor for someone."

3

Lieutenant Adrian Rodriguez and Officer Mario Lasoya of the San Patricio County Sherriff's Office testified that they responded to a radio call about a theft in progress. Both observed that the water heater in the bed of Deanda's truck appeared to be leaking hot water. Lasoya testified Deanda claimed she had been hired to pick up a water heater on behalf of a friend, Ruby Montelongo, who drove a black car. Lasoya also testified that he viewed the crime scene and noted there was damage to the Smith's utility room: the door jamb was damaged, and the water pipes and electrical wire had been cut.[1]

Deanda also testified at trial. A former home health provider, Deanda testified that she had just gotten out of work when she received a call from Montelongo, who owns an apartment complex and needed help transporting a water heater. Deanda said she had previously helped Montelongo move a king size bed and dining room table. Montelongo, the owner of a black Cadillac, had been there on the Smith property with her. Deanda testified that while she was on the Smith property, she never exited her truck, she was instructed to back it up under the carport, and Montelongo arranged for two people to put the water heater into her truck bed. Deanda testified she presumed Montelongo "was buying, doing the transaction for the water heater" when Eugene arrived and she saw the two speaking. Deanda denied ever speaking to Eugene. After they left the Smith property, Deanda "noticed [Montelongo] driving pretty fast" and then she saw the Smiths drive alongside her, demanding that she pull over.

> I did stop because I didn't steal that water heater. I wasn't going to go anywhere. Pa[z] was telling me, 'Let's go. Keep going. Go to [Montelongo's] house.' I said, 'No. No. I'm not going to run with a water heater. I don't need it, huh-uh.' I said, 'No. No.'

---

[1] At trial, pictures were admitted of the Smith's damaged utility door and piping. "As you saw in the picture, they cut the pipe, the PVC pipes, out in order to take the water heater with them . . . . You could see on the picture where they had pried the door open and it had also broken the hinges," explained Eugene.

4

Deanda said she tried to call Montelongo but was unable to get her to return. Deanda refuted ever being on the Smith property prior to January 14. Deanda explained she has lived in her family's home for fifty-three years and has no need to tour a rental property.

Deanda further disclosed that she had previously been convicted of a felony burglary offense "when [she] was [eighteen], fresh out of high school," but she had "t[aken] a charge for somebody else." In 2011, Deanda "went to prison" for a driving while intoxicated conviction.

On cross-examination, Deanda stated the water heater was so heavy that "it weighed down [her] truck," and her "truck couldn't run." When Deanda was asked if that was the true reason she did not try to flee when the Smiths demanded that she stop her vehicle, she maintained she had no intentions of absconding. Neither Montelongo nor Paz testified.[2]

The trial court thereafter made the following finding: "I don't believe that there's any evidence to show that you actually entered into that structure yourself, but under the law of parties, I am going to find you guilty of this offense."

Prior to a hearing on punishment, Deanda informed the trial court that she had reached a joint agreement with the State regarding a recommended punishment. Paz, Deanda's co-defendant, was sentenced to one year imprisonment in the State Jail Division of the Texas Department of Criminal Justice, and Deanda requested the same. The trial court thereafter assessed Deanda's punishment at one year imprisonment. This appeal followed.

---

[2] Deanda's trial counsel informed the trial court that though Montelongo had not been subpoenaed, Montelongo promised Deanda she "was voluntarily going to be [t]here" to testify. The bailiff called for Montelongo, and there was no response.

## II. SUFFICIENCY OF THE EVIDENCE

By her sole issue, Deanda argues the evidence was legally insufficient to convict her of burglary of a building. *See id.*

## A. Standard of Review and Applicable Law

In reviewing the sufficiency of the evidence to support a conviction, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

We consider both direct and circumstantial evidence as well as all reasonable inferences that may be drawn from the evidence. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt. *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018); *Temple v. State*, 390 S.W.3d 341, 359 (Tex. Crim. App. 2013). "Each fact need not point directly and independently to the guilt of a defendant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Walker v. State*, 594 S.W.3d 330, 335 (Tex. Crim. App. 2020) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). We resolve any evidentiary inconsistencies in favor of the verdict, keeping in mind that the fact finder is the exclusive judge of the facts, the credibility of the witnesses, and the weight to give their testimony. *Walker*, 594 S.W.3d at 335; *see* TEX. CODE CRIM. PROC. ANN. art. 38.04.

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge even where the case is presented before a trial court. *See Metcalf v. State*, 597 S.W.3d 847, 856 (Tex. Crim. App. 2020) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)); *Romano v. State*, 610 S.W.3d 30, 34 (Tex. Crim. App. 2020). The hypothetically correct jury charge accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Walker*, 594 S.W.3d at 336.

Thus, the State here was required to prove beyond a reasonable doubt that (1) Deanda (2) entered a building (3) without the effective consent of the owner, Eugene, and (4) with intent to commit a theft. *See* TEX. PENAL CODE ANN. § 30.02(a)(1). A person commits theft if she "unlawfully appropriates property with intent to deprive the owner of property." *Id.* § 31.03(a). "By its nature, a culpable mental state must generally be inferred from the circumstances." *Nisbett*, 552 S.W.3d at 267; *Duntsch v. State*, 568 S.W.3d 193, 216 (Tex. App.—Dallas 2018, pet. ref'd) ("Proof of mental state will almost always depend upon circumstantial evidence.").

Further, "the law of parties authorizes conviction for the collective conduct of two or more people." *Johnson v. State*, 560 S.W.3d 224, 229–30 (Tex. Crim. App. 2018). "A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." TEX. PENAL CODE ANN. § 7.01(a). "A person is criminally responsible for an offense committed by the conduct of another if[,] . . . acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the

7

other person to commit the offense." *Id.* § 7.02(a)(2); *Cary v. State*, 507 S.W.3d 750, 757–58 (Tex. Crim. App. 2016). "The necessary specific intent can be proven through circumstantial evidence, and we may rely on events that took place before, during, or after the commission of the offense." *Cary*, 507 S.W.3d at 758 (citing *Wygal v. State*, 555 S.W.2d 465 (Tex. Crim. App. 1977)).

The State is not required to plead the law of parties in the indictment. *See Marable v. State*, 85 S.W.3d 287, 287–88 (Tex. Crim. App. 2002); *Justice v. State*, 532 S.W.3d 862, 865 (Tex. App.—Houston [14th Dist.] 2017, no pet.). And in a bench trial, where there is no charge, the judge is presumed to apply the law correctly. *Justice*, 532 S.W.3d at 865. "Accordingly, if the evidence is sufficient to support a conviction for a state jail felony under a party theory of liability, we need not consider whether the evidence is also sufficient to support a conviction under a principal theory of liability." *Id.* (citing *Humaran v. State*, 478 S.W.3d 887, 896 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd)); *see also Patterson v. State*, 606 S.W.3d 3, 24 (Tex. App.—Corpus Christi–Edinburg 2020, pet. ref'd) ("Under the law of parties, direct evidence of each element of the offense is not required.") (internal quotations omitted).

## B.    Analysis

Deanda specifically argues the evidence is insufficient to support her conviction for burglary of a building because "she lacked the intent necessary to commit a crime[,] and she did not physically enter the premises."

We first observe that the evidence incontrovertibly shows that Deanda was present at the scene of the crime. *See Washington v. State*, 449 S.W.3d 555, 562 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("'Proof that the accused was at or near the scene of

8

the crime at or about the time of its commission, when coupled with other suspicious circumstances, may tend to connect the accused to the crime so as to furnish sufficient corroboration to support a conviction.'" (quoting *Brown v. State*, 672 S.W.2d 487, 489 (Tex. Crim. App. 1984))); *see also Cerbantez v. State*, No. 07-16-00197-CR, 2017 WL 3723362, at *2 (Tex. App.—Amarillo Aug. 28, 2017, pet. ref'd) (mem. op., not designated for publication) (providing the same). The Smiths separately identified Deanda as one of the individuals on their property without their permission. The Smiths likewise witnessed Deanda drive the vehicle transporting their water heater, which officers testified was still full of water, emanating hot steam at the time of their intervention—indicating recency of theft; Lasoya additionally noted there was damage to the Smith property: the door jamb was broken, and the water pipes and electrical wire had been cut. *See Walker*, 594 S.W.3d at 335; *see also Veliz v. State*, No. 13-16-00114-CR, 2017 WL 2200316, at *2 (Tex. App.—Corpus Christi–Edinburg Mar. 16, 2017, pet. ref'd) (mem. op., not designated for publication) ("The element of entry can be established by inference, just like the elements of any other offense."). The Smiths further testified they recognized Deanda from when she had come to tour their rental property two weeks prior. *See Walker*, 594 S.W.3d at 335; *Washington*, 449 S.W.3d at 562.

Although Deanda maintained that she had never previously been to the Smith property, that she was there to assist Montelongo in moving, and that she remained in her vehicle at all times and did not witness anyone forcibly enter the Smith property, the trial court was free to disbelieve Deanda's testimony refuting her intent to commit theft. *See Ex parte Mayhugh*, 512 S.W.3d 285, 298 (Tex. Crim. App. 2016) ("[T]he fact-finder is free to believe all, part, or none of a witness's testimony."); *Meekins v. State*, 340

9

S.W.3d 454, 461 n.32 (Tex. Crim. App. 2011) ("Determinations of witness credibility are left entirely to the fact finder, who is in the unique position to observe the witness' body language, demeanor, tone of voice, and other indicia of credibility."); *see generally Gear v. State*, 340 S.W.3d 743, 747–48 & n.9 (Tex. Crim. App. 2011) (providing that evidence of intent includes, but is not limited to, evidence of the following: forcible entry, implausible and inconsistent explanations, and flight upon being interrupted during or after the commission of the offense); *Dixon v. State*, 43 S.W.3d 548, 552 (Tex. App.—Texarkana 2001, no pet.) (providing that whether a defendant's explanation for possession of recently stolen property is true or reasonable is a question of fact to be resolved by the trier of fact); *see also Turner v. State*, No. 06-18-00034-CR, 2018 WL 4701587, at *5 (Tex. App.—Texarkana Oct. 2, 2018, pet. ref'd) (mem. op., not designated for publication) (concluding that although the appellant testified that he had not witnessed the codefendant commit theft, "the trial court could have inferred that Turner saw Allison remove the items out of the garage and place them in the truck").

The trial court could have likewise reasonably disbelieved Deanda's claims that she pulled over promptly because she did not wish to abscond and instead accepted the State's theory that Deanda attempted to flee when she drove fifty yards and then stopped and was only unable to flee due to the excessive weight of the water heater. *See Meekins*, 340 S.W.3d at 461 n.32; *Reyes v. State*, 422 S.W.3d 18, 24 (Tex. App.—Waco 2013, pet. ref'd) ("The falsity or unreasonableness of an explanation may be shown by circumstantial evidence."); *see also Gomez v. State*, No. 13-13-00084-CR, 2013 WL 3326032, at *2 (Tex. App.—Corpus Christi–Edinburg June 27, 2013, pet. ref'd) (mem. op., not designated for publication).

Finally, that Deanda herself never entered the building does not absolve her of legal responsibility where evidence indicates she was physically present at the commission of the offense, drove the vehicle carrying the stolen item, and additional evidence indicates that Deanda knew where the would-be stolen item would be—thereby encouraging and facilitating the commission of the offense. *See Cary*, 507 S.W.3d at 757–58; *Barrientos v. State*, 539 S.W.3d 482, 490 (Tex. App.—Houston [1st Dist.] 2017, no pet.) ("Evidence is sufficient to convict under the law of parties when the defendant is physically present at the commission of the offense and encourages its commission by acts, words, or other agreement.") (internal quotations omitted); *see, e.g.*, *Miller v. State*, 83 S.W.3d 308, 318 (Tex. App.—Austin 2002, pet. ref'd) (holding evidence sufficient to sustain murder conviction as party to offense when circumstances showed that appellant drove the shooter, assisted the shooter in obtaining the murder weapon, and attempted to flee with the shooter).

A rational trier of fact could have reasonably concluded the elements of burglary of a building were established beyond a reasonable doubt. *See Stahmann*, 602 S.W.3d at 577. Thus, the evidence is sufficient to support Deanda's conviction, and we overrule her sole issue.

### III.　CONCLUSION

We affirm the trial court's judgment.

CLARISSA SILVA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
11th day of March, 2021.