

# NUMBER 13-22-00001-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**ADOLFO GARCIA JR.,**                                                                                      **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                                                      **Appellee.**

---

### On appeal from the 36th District Court
### of San Patricio County, Texas.

---

# MEMORANDUM OPINION

### Before Justices Benavides, Hinojosa, and Silva
### Memorandum Opinion by Justice Hinojosa

By a three-count indictment, the State of Texas charged appellant Adolfo Garcia Jr. with: (1) burglary of a habitation, a second-degree felony; (2) aggravated assault with a deadly weapon, a second-degree felony; and (3) assault family violence with a prior family violence conviction, a third-degree felony. *See* TEX. PENAL CODE ANN.

§§ 22.01(b)(2)(A), 22.02(a)(2), 30.02(c)(2). The indictment included an enhancement paragraph, to which appellant pleaded "not true," for a 1992 voluntary manslaughter conviction. A jury found appellant guilty on all counts. Appellant elected for the trial court to impose sentencing, and it sentenced him to fifteen years' imprisonment on Count One, fifteen years' imprisonment on Count Two, and eight years' imprisonment on Count Three, with each sentence to run concurrently.

By two issues, appellant argues that (1) "the trial court erred in admitting evidence of [his] 1992 manslaughter conviction during the guilt[-innocence] stage" of trial, and (2) the trial evidence was insufficient to sustain his conviction. We affirm.

## I. BACKGROUND

Trial commenced on October 19, 2021. We summarize the relevant testimony.

## A. Officer Steven Anthoney Perez's Testimony

Mathis Police Department Officer Steven Anthoney Perez testified that he was dispatched to a disturbance on August 28, 2020. When he arrived at the address on North Atascosa Street, Officer Perez encountered two women, one of whom was Maxine Crystal Valenzuela. Officer Perez stated that Valenzuela "was distraught," "[v]ery upset," and, based on the looks of Valenzuela's swollen face, "had been in a fight or been beaten up somehow." Valenzuela informed Officer Perez that she was assaulted by appellant at her nearby address on North Frio Street. She told Officer Perez that appellant had struck her with a pole and shocked her with a taser. Officer Perez photographed Valenzuela's injuries[1] and, at trial, noted that the photos depict "[a] large contusion to the left side of

---

[1] Officer Perez's photographs of Valenzuela's injuries were entered into the record as State's Exhibits one through six.

2

[Valenzuela's] face . . . , major swelling, redness and blueness to the left side of her eye," a contusion on her forehead, and red marks on her neck purportedly from being strangled.

Officer Perez testified that he then went to and began photographing Valenzuela's home.[2] Officer Perez noted that the photos of Valenzuela's home depict (1) damage to the front door and door frame which he believed, based on detached door lock plates resting on the ground, had been "busted into—forced entry," (2) a metal pole with a concrete base left just inside the front door, (3) a couch that Valenzuela "advised that she was sitting [on] during the assault," (4) a taser, and (5) a bloody cloth or rug.

Valenzuela informed Officer Perez of an address on North 9th Street at which she believed appellant would be found. Body camera footage was entered into evidence[3] and shows appellant's younger sister (Sister) answering the door on North 9th Street when Officer Perez arrived. Officer Perez asked Sister if appellant was at the house. Sister pointed to her right and asked Officer Perez if he saw a truck there; he answered affirmatively. Sister stated that appellant was not at her house, that she "did not even see [appellant] pull up" to her home that day, and that appellant usually parks his truck there "and he'll take off in a bike." Sister informed Officer Perez that appellant would then come back later and "whatever time it is, he'll leave in the truck."

## B.    Valenzuela's Testimony

Valenzuela testified that she has known appellant for about seventeen years and the two were once in an "intimate personal relations[hip]." She stated that she had once

---

[2] Officer Perez's photographs of Valenzuela's home were entered into the record as State's Exhibits seven through eleven.

[3] A portion of the body camera footage, marked as State's Exhibit fifteen, was shown to the jury.

3

lived with appellant but that she did not live with him on the day of the assault. She noted that appellant had abused her once before, and, without objection, the State entered appellant's judgment of conviction in that 2005 assault case into evidence.

The State asked Valenzuela to describe what happened on August 28, 2020, and she responded as follows:

> I had been separated for awhile from [appellant]. I was laying on my couch . . . when I heard my door bust open. And he was standing there with a stop sign pole and a taser. When he struck me with the pole, he tased me at the same time.
>
> . . . .
>
> He started beating me. And he beat me repeatedly. And I begged him several times to let me go. And I told him that—I lied to him. I told him that my mom was going to come and drop off the girls to me in the morning because my stepmom—my stepdad and my mom were going to go to San Antonio. I made up a lie just so he would release me and let go of me. Otherwise, I wouldn't have known what more could have had happened to me.

Valenzuela testified that the assault continued for "a good [twenty] minutes or longer," that she was certain it was appellant who attacked her, and that appellant did not have permission to enter her home at that time. Appellant finally departed with Valenzuela's cell phone, and Valenzuela went to a neighbor's house to call the police.

In her opening statement, appellant's trial counsel informed the jury that "the evidence will show that [Valenzuela] had her own history of assaultiveness and . . . drug[] [use], which could have played a huge factor in what transpired on" August 28. On cross-examination of Valenzuela, appellant sought to develop that theory. Trial counsel asked Valenzuela why she was in custody and in jail clothing during trial, and Valenzuela responded that she was being detained on a drug charge. The following exchange then

took place:

[Trial Counsel]: And the drug charge is not the only time that you had a run-in with the law, correct?

[Valenzuela]: No, ma'am.

[Trial Counsel]: Do you recall being arrested for assault on a public servant?

[Valenzuela]: I don't recall.

[Trial Counsel]: Do you recall being arrested for aggravated robbery?

[Valenzuela]: I do recall that one.

[Trial Counsel]: So you have your own history of being assaultive, correct?

[Valenzuela]: Yes, ma'am.

[Trial Counsel]: And so you want this jury to believe that [appellant] assaulted you?

[Valenzuela]: Yes, ma'am.

Following this exchange, trial counsel passed the witness, and the State requested to approach the bench. The State informed the trial court that appellant "asked the victim [Valenzuela] about her violent criminal history, suggesting that she can be the aggressor" and that it "intend[ed] to ask the victim about what she knows about [appellant]'s violent criminal history." Trial counsel objected on Rule 403 grounds, arguing that the "prejudice outweighs any relevant information that the State would be trying to ask about." *See* TEX. R. EVID. 403. The trial court overruled the objection.

On redirect examination, the State asked Valenzuela if she knew whether appellant "has a violent criminal history," and she responded, "Yes, he does." The State asked Valenzuela if she "know[s] what [appellant] went to the penitentiary on," and she

responded, "I know for killing someone out of self defense. I'm not too sure." The State concluded, "For killing somebody?" Valenzuela nodded her head.

On recross-examination, trial counsel asked Valenzuela, "So you really don't know [why he went to prison], correct?" Valenzuela responded, "I know he went to prison for killing a man, but I don't know what the situation was about. . . . I mean, I probably wasn't even born at the time. I'm not too sure. I mean, he was young when he committed that crime."

## C.    Appellant's Testimony

Appellant testified that he and Valenzuela had an on and off relationship, that they have a child together who is sixteen years old, and that around August 2020, he and Valenzuela had just ended their relationship. Appellant stated that he was not at Valenzuela's house on August 28, 2020. He denied kicking, tasing, or hitting Valenzuela with a pole, and he denied kicking down her door. Appellant believed Valenzuela was lying about his involvement because she "caught [him] with someone else the day before," which, according to appellant, was the reason the two ended their relationship. When asked where he was on the day of the assault, appellant replied, "Honest to God, I don't know. I must have been in Orange Grove[, Texas]," where he was then staying with his cousin.

Appellant's trial counsel concluded direct examination by asking appellant about his "criminal history":

[Trial Counsel]:    It was mentioned . . . that you went to prison for murder; is that true?

[Appellant]:    Voluntary manslaughter.

6

| | |
|---|---|
| [Trial Counsel]: | And why were you convicted of voluntary manslaughter? |
| [Appellant]: | This guy had a gun to my brother's head[,] and I picked up a gun and I shot him. |
| [Trial Counsel]: | So . . . were you defending your brother? |
| [Appellant]: | Yes, ma'am. |
| [Trial Counsel]: | Do you have any other history that you know about? |
| [Appellant]: | Yeah, I got one more—two more, I think. |
| [Trial Counsel]: | Two more what? |
| [Appellant]: | Felonies. |
| [Trial Counsel]: | For what? |
| [Appellant]: | For burglary of a building and credit card abuse. |
| [Trial Counsel]: | Do you have any—aside from murder [sic], do you have any assault in your history that you know about? |
| [Appellant]: | That I know about, no. |
| [Trial Counsel]: | Would it surprise you if there was a 2005 assault involving you? |
| [Appellant]: | Yes. I still can't remember that. |

On cross-examination, the State entered, without objection, appellant's judgment for his 1992 voluntary manslaughter conviction. Appellant objected when the State attempted to ask him about the circumstances of the 1992 incident, and the trial court sustained the objection.

Appellant testified that his truck was at his sister's house on the day of the assault but that he "do[es]n't drive it much, because [he] do[es]n't got [sic] insurance." Appellant also testified that his truck's engine "was messed up" and he "was trying to fix it." Given

7

the condition of his truck, appellant's cousin would drive him to and from work. When asked about his sister's statements to Officer Perez about his practice of leaving his truck at her house and departing on a bike, appellant said his sister was "probably" confused, and that his truck "was parked beside the house all the time."

Both sides rested, and the jury found appellant guilty on all charges. The trial court imposed its sentence on November 16, 2021. This appeal followed.

## II. RULE 403

By his first issue, appellant argues that, under Texas Rules of Evidence 403 and 404, the trial court erred by allowing the State to admit evidence of his 1992 voluntary manslaughter conviction. *See* TEX. R. EVID. 403 ("Excluding Relevant Evidence for Prejudice, Confusion, or Other Reasons"), 404(b) (concerning character evidence). However, appellant only objected to the trial court's ruling on Rule 403 grounds, and thus, his Rule 404(b) arguments are not preserved for appellate review. *See* TEX. R. APP. P. 33.1; *Yazdchi v. State*, 428 S.W.3d 831, 844 (Tex. Crim. App. 2014) ("[A] point of error on appeal must comport with the objection made at trial."). Accordingly, we limit our analysis to appellant's Rule 403 argument.

### A. Applicable Law & Standard of Review

Under Texas Rules of Evidence 401 and 402, relevant evidence is admissible unless otherwise provided in the rules. *See* TEX. R. EVID. 401, 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." *Id.* R. 401. Admissible evidence may nevertheless be excluded under Rule 403 "if its probative value

8

is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." *Id.* R. 403. "Rule 403 favors admissibility of relevant evidence, and the presumption is that relevant evidence will be more probative than prejudicial." *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1990) (op. on reh'g). Once a party lodges a Rule 403 objection, "the trial court is called upon to weigh probativeness of the evidence against its potential for 'unfair' prejudice—that is, . . . its tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Id.* (internal quotation marks omitted); *see Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006) (listing factors the trial court must balance while undertaking its Rule 403 analysis).

We review a trial court's decision to admit or exclude evidence under Rule 403 for an abuse of discretion. *Valadez v. State*, No. PD-0574-19, 2022 WL 946268, at *4 (Tex. Crim. App. Mar. 30, 2022); *Montgomery*, 810 S.W.2d at 391. "There is no abuse of discretion if the trial court's ruling is within the zone of reasonable disagreement." *Valadez*, 2022 WL 946268, at *4.

When a trial court errs by admitting evidence, "and the error is not constitutional, we apply the harmless error standard of [Texas] Rule [of Appellate Procedure] 44.2(b) where we disregard all errors that did not affect appellant's substantial rights." *Gonzalez v. State*, 510 S.W.3d 10, 28 (Tex. App.—Corpus Christi–Edinburg 2014, pet. ref'd); *see* TEX. R. APP. P. 44.2; *Celis v. State*, 354 S.W.3d 7, 38 (Tex. App.—Corpus Christi–Edinburg 2011) ("Generally, if the trial court's ruling 'merely offends the rules of evidence,'

9

the erroneous admission or exclusion of evidence is nonconstitutional error." (quoting *Melgar v. State*, 236 S.W.3d 302, 308 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd))), *aff'd*, 416 S.W.3d 419 (Tex. Crim. App. 2013). "Substantial rights are not affected by the erroneous admission or exclusion of evidence if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect." *Celis*, 354 S.W.3d at 38 (cleaned up); *see Bagheri v. State*, 119 S.W.3d 755, 763 (Tex. Crim. App. 2003). In making that determination, we consider factors such as testimony, overwhelming evidence of guilt, the jury charge, the theories of the State and defense, closing arguments, whether the erroneously admitted evidence was cumulative, whether the evidence was elicited from an expert, and whether the State emphasized the evidence. *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018); *Bagheri*, 119 S.W.3d at 763; *Motilla v. State*, 78 S.W.3d 352, 356–57 (Tex. Crim. App. 2002).

**B.    Analysis**

In this case, we will assume without deciding that the trial court erred by overruling appellant's objection to the admission of his prior voluntary manslaughter conviction into evidence because, even so, we have "fair assurance that the error did not influence the jury, or had but a slight effect."[4]  *See Bagheri*, 119 S.W.3d at 763.

A review of the record in this case reveals that the State neither emphasized appellant's previous conviction for voluntary manslaughter, nor mentioned the conviction

---

[4] In his brief on appeal, appellant argues that the trial court erred under Texas Rule of Evidence 403, but he does not brief a harm analysis under Texas Rule of Appellate Procedure 44.2(b). *See* TEX. R. EVID. 403; TEX. R. APP. P. 44.2.

in voir dire or its opening and closing arguments. In fact, the record reflects that the allegedly improper testimony appears in about two pages total of a ninety-six page trial transcript, that about half of the testimony was elicited by defense counsel, and that the testimony was elicited from Valenzuela and appellant only; not an expert witness. *Compare Gonzalez*, 544 S.W.3d at 373 (concluding that error was harmless because "[t]he entirety of the [improperly admitted] evidence . . . was elicited in five pages of the State's thirty-two page cross-examination of Appellant"), *with Mitten v. State*, 228 S.W.3d 693, 697–701 (Tex. App.—Corpus Christi–Edinburg 2005, pet. ref'd) (finding harmful error in trial court's improper admission of defendant's statement because, among other things, the evidence was heavily emphasized by the State throughout trial and elicited through expert testimony). Further, in her brief testimony raising appellant's prior voluntary manslaughter conviction, Valenzuela stated that she believed appellant shot somebody in self-defense. And appellant reiterated in his testimony that the reason he shot and killed somebody was to protect his brother who had a gun to his head. The jury was thus informed of the circumstances of appellant's voluntary manslaughter conviction and that it was not a random homicidal act. *See Williams v. State*, 906 S.W.2d 58, 63 (Tex. App.—Tyler 1995, pet. ref'd) (holding that the trial court erred by allowing the State to question defendant about his prior conviction for possession of crack cocaine, but concluding the error was harmless because, *inter alia*, appellant had the opportunity to explain to the jury the details of the conviction).

The record also lacks any evidence that the 1992 voluntary manslaughter conviction was considered by the jury or swayed its verdict in any way. *See Veliz v. State*,

474 S.W.3d 354, 367 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) ("[I]n assessing harm, we may also review the jury's questions asked during deliberations." (quoting *Washington v. State*, 449 S.W.3d 555, 567 (Tex. App.—Houston [14th Dist.] 2014, no pet.))). Indeed, during deliberations, the jury sent two notes to the trial court: the first requested the judgment of conviction in appellant's 2005 assault case involving Valenzuela, and the second requested the opportunity to watch the portion of Officer Perez's body camera footage where he speaks with Sister. This indicates the jury's focus on the criminal acts germane to the three-count indictment in this case. *Compare Washington*, 449 S.W.3d at 568 (holding that jury charge that improperly included modes of party liability was harmless because notes from jury indicated it was focused on relevant proper theories of liability), *with Veliz*, 472 S.W.3d at 367–68 (finding harm where two notes from the jury requested access to improperly admitted evidence and testimony regarding the qualifications and training of the expert witness presenting it).

Finally, Valenzuela provided firsthand testimony that she was resting on her couch on August 28, 2020, when appellant broke into her home, beat her with a pole, and tased her. The State, without objection, produced for the jury photographs of Valenzuela's injuries, photographs of the damage to Valenzuela's home, and a copy of appellant's previous judgment of conviction for assaulting Valenzuela in 2005. Further, Sister's statements, played for the jury through Officer Perez's body camera footage, called into question appellant's purported alibi evidence regarding the operability of his truck, his modes of transportation, and his location at the time of the assault. In other words, there was ample evidence for the jury to consider when reaching its verdict without turning to

12

the 1992 conviction. *See Motilla*, 78 S.W.3d at 358 ("We hold once again that the evidence of the defendant's guilt is a factor to be considered in any thorough harm analysis."); *Gonzalez*, 510 S.W.3d at 29 ("We agree that the [erroneously admitted] evidence played a large part in the State's case. . . . Nevertheless, we conclude that the admission of this evidence was harmless error given . . . the extent of the other evidence of appellant's guilt . . . ."). Given the foregoing, we have "fair assurance" that the evidence of appellant's prior involuntary manslaughter conviction had either no or slight effect in this case. *See Bagheri*, 119 S.W.3d at 763. We thus overrule appellant's first issue.

### III.    SUFFICIENCY OF THE EVIDENCE

By his second issue, appellant argues that the evidence was insufficient to sustain his conviction. Specifically, he argues the evidence "is insufficient to prove the identity of the perpetrator, nor is it sufficient to disprove the defense alibi that [a]ppellant was residing in Orange Grove, Texas, at the time of the incident."

### A.    Standard of Review & Applicable Law

In reviewing the sufficiency of the evidence to support a conviction, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). We consider both direct and circumstantial evidence as well as all reasonable inferences that may be drawn from the evidence and are not mere speculation. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We resolve any evidentiary

13

inconsistencies in favor of the verdict, keeping in mind that the factfinder is the exclusive judge of the facts, the credibility of the witnesses, and the weight to give their testimony. *Walker v. State*, 594 S.W.3d 330, 335 (Tex. Crim. App. 2020); *see* TEX. CODE CRIM. PROC. ANN. art. 38.04.

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Metcalf v. State*, 597 S.W.3d 847, 856 (Tex. Crim. App. 2020) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)); *see Romano v. State*, 610 S.W.3d 30, 34 (Tex. Crim. App. 2020). "The hypothetically correct jury charge accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Walker*, 594 S.W.3d at 336. The State has the burden of establishing the essential elements of an offense, but does not have the burden of disproving an a defendant's alibi defense beyond a reasonable doubt. *Drake v. State*, 860 S.W.2d 182, 185 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd).

The State must prove beyond a reasonable doubt that the accused is the person who committed the crime charged. *Johnson v. State*, 673 S.W.2d 190, 196 (Tex. Crim. App. 1984); *Stone v. State*, 635 S.W.3d 763, 767 (Tex. App.—Houston [14th Dist.] 2021, pet. ref'd). No formalized procedure is required for the State to prove the identity of the accused. *See Ingerson v. State*, 559 S.W.3d 501, 509 (Tex. Crim. App. 2018). The State may prove the defendant's identity by direct evidence, circumstantial evidence, or by reasonable inferences from that evidence. *Ingerson*, 559 S.W.3d at 509 (citing *Gardner*

14

*v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009)).

A person commits the offense of burglary of a habitation "if, without the effective consent of the owner, [he] . . . enters a building or habitation and commits or attempts to commit a felony, theft, or an assault." TEX. PENAL CODE ANN. § 30.02(a)(3). A person commits the offense of aggravated assault with a deadly weapon if he "intentionally, knowingly, or recklessly causes bodily injury to another" and "uses or exhibits a deadly weapon during the commission of the assault." *Id.* §§ 22.01(a)(1), 22.02(a)(2). A "deadly weapon" is defined as "a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury" or "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* § 1.07(a)(17). A person commits the offense of assault family violence if he "intentionally, knowingly, or recklessly causes bodily injury to . . . a person whose relationship to or association with the defendant is described by [§] 71.0021(b)[] [or §] 71.003" of the Texas Family Code. *Id.* § 22.01(b)(2)(A). Texas Family Code § 71.0021(b) concerns "dating violence," and defines a "dating relationship" as "a relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature." TEX. FAM. CODE ANN. § 71.0021(b). "The existence of such a relationship shall be determined based on consideration of: (1) the length of the relationship; (2) the nature of the relationship; and (3) the frequency and type of interaction between the persons involved in the relationship." *Id.* Section 71.003 defines a "family" relationship to include, among other things, "individuals who are the parents of the same child, without regard to marriage." *Id.* § 71.003.

**B. Analysis**

As noted above, Valenzuela testified that she was resting on her couch when appellant kicked down her door, entered her home without consent, and began attacking her with a metal pole and a taser. *See* TEX. PENAL CODE ANN. §§ 1.07(a)(17), 22.01(a)(1), 22.02(a)(2), 30.02(a)(3); *Ingerson*, 559 S.W.3d at 509. Valenzuela and appellant both testified that they had an on-and-off romantic relationship that spanned about seventeen years. *See* TEX. PENAL CODE ANN. § 22.01(b)(2)(A); TEX. FAM. CODE ANN. § 71.0021(b). Appellant testified that he and Valenzuela have a sixteen-year-old child together and were again engaged in a dating relationship until the day before the assault, when Valenzuela broke up with him because she "caught [him] with someone else." *See* TEX. FAM. CODE ANN. §§ 71.0021(b)(1)–(3), 71.003. And, without objection, the State entered into evidence appellant's judgment of conviction for assaulting Valenzuela in 2005. Given this evidence, a rational trier of fact could have found the elements in each of the three counts in the indictment and appellant's identity as the perpetrator beyond a reasonable doubt. *See Stahmann*, 602 S.W.3d at 577; *Metcalf*, 597 S.W.3d at 856.

Nevertheless, appellant argues that the evidence was insufficient to convict him because Valenzuela had "a checkered past . . . [and] a motive to implicate [appellant] as the person who broke into her home and attacked her," and because "circumstantial evidence showed that [appellant] was likely in Orange Grove, Texas" at the time of the attack. The jury heard appellant's testimony denying that he broke into Valenzuela's home or attacked her and that he "[h]onest to God" didn't know where he was on the day of the attack, but "must have been in Orange Grove[, Texas]." The jury also heard Officer

16

Perez's testimony and viewed his body camera footage regarding his interaction with Sister. Officer Perez testified that on the day of the assault, he saw appellant's truck parked next to Sister's house. Sister noted that she did not see appellant pull up to her home that day and that appellant would usually park his truck at her house and "take off in a bike." The State argued that Sister's statements show that appellant was lying about the condition of his vehicle and, thus, his inability to be near the scene of the crime. In response, appellant stated that his sister was mistaken about the condition of his truck and his modes of transportation at the time of the assault. The jury was free to weigh the credibility of the three witnesses' respective testimony. *See Walker*, 594 S.W.3d at 335; *see also Dean v. State*, No. 13-13-00370-CR, 2015 WL 5451106, at *4 (Tex. App.— Corpus Christi–Edinburg July 24, 2015, pet. ref'd) (mem. op., not designated for publication) ("[T]he viability of [appellant's] alibi defense ultimately rests upon a credibility determination."). In this case, it evidently resolved any conflict in the testimony against appellant. That conclusion is supported by the record, and we defer to it. *See Walker*, 594 S.W.3d at 335. Consequently, we overrule appellant's second issue.

## IV.    CONCLUSION

We affirm the trial court's judgment.

LETICIA HINOJOSA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
11th day of August, 2022.

17