

## NUMBER 13-24-00163-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

---

**BRANDON RENE JAMES,**                                                              **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                              **Appellee.**

---

## ON APPEAL FROM THE 329TH DISTRICT COURT
## OF WHARTON COUNTY, TEXAS

---

## MEMORANDUM OPINION

### Before Chief Justice Tijerina and Justices West and Fonseca
### Memorandum Opinion by Justice Fonseca

Appellant Brandon Rene James was sentenced to life imprisonment for having committed the offense of capital murder in the course of committing armed robbery. *See* TEX. PENAL CODE ANN. § 19.03(a)(2). He appeals his conviction based on two grounds: (1) there was insufficient evidence to support his conviction, and (2) the trial court improperly excluded testimony regarding the relationship between appellant and the

victim, Shane Singleton. We affirm.

## I. BACKGROUND

On February 23, 2021, Singleton called his father to tell him that he was going to look at an AR-15 rifle owned by Drew Quinonez, who had told Singleton he was looking to sell the gun. Singleton drove in a Toyota sedan to Drew's residence on Alvin Street in El Campo, Texas. When he arrived, a group of individuals was present, including appellant, Dayton Quinonez, Devin Garcia, Devin Lott, and Ethan Ortiz. Drew got into Singleton's vehicle armed with the AR-15, and soon thereafter, appellant, Ortiz, and other individuals approached the vehicle all armed with firearms. They attempted to rob Singleton at gunpoint, but Singleton was armed and shot at the group, allegedly wounding Garcia. In the resulting exchange of gunfire, appellant allegedly shot Singleton in the back of the head with a .22 caliber rifle. Appellant and the others present were eventually arrested, and appellant was indicted on January 4, 2022, for the offense described above. *See id.*

On January 17, 2024, the State of Texas (the State) disclosed that Ortiz would testify as a witness at trial. On January 25, 2024, the State also filed its second amended motion in limine including request 20, which sought to limit any testimony or evidence regarding any "drug use, drug dealing, or the posting of drugs on social media by" Singleton. On February 9, 2024, the trial court held a hearing on the State's second amended motion in limine and granted the State's request 20.

Trial commenced on February 28, 2024. At the start of trial, appellant's counsel objected to the granting of State's request 20, but the trial court maintained its ruling. In the middle of trial, defense counsel again argued that testimony regarding drugs found in

2

Singleton's car should be admitted because, along with shell casings, drugs were part of the items inventoried. Defense counsel also argued Singleton having possession of drugs limited Singleton's ability to claim he shot in self-defense. The State responded that testimony regarding recovery of shell casings from the vehicle did not imply or allow admission of irrelevant testimony regarding drugs present in the vehicle. The State further replied that whether Singleton could argue self-defense was irrelevant to the charges against appellant. The trial court again declined to revisit its ruling.

Diana Jaramillo testified she was present at Alvin Street on the night of February 23, 2021. She was outside on her porch scrolling through her phone when she saw a car pull up at the adjacent house, the subject property, which was a few steps or less away. Sometime later, she heard three gunshots. She verified that State's exhibits 12–15 accurately identified the general area of the incident and that State's exhibits 16–34 accurately depicted photos of Alvin Street and the houses around where the incident occurred. Using the photos, Jaramillo identified the porch she was sitting on and the residence where the shooting occurred. She testified that she saw many people coming in and out of the adjacent residence but that no one ever put lights on. After she heard the gunshots, she hid on her front porch and saw people running but was not able to identify anyone. She did not hear voices and described herself as in a dazed state. She thought she saw the previously mentioned car crash into the adjacent garage. She could not recall whether it was a Toyota, but remembered it was a dark color. Jaramillo testified that she was able to run off the porch to the corner of her house and report the shooting to the police. She described the incident to the police as per her testimony.

Janice Eden testified as a witness who lived at a residence on the corner of Alvin Street and Avenue D that was just west of the subject property. Eden testified that on the evening of February 23, her son came downstairs and told her that he heard two gunshots. She did not hear the shots personally but heard them on her home security camera. Her camera faced Avenue D, recorded continuously, and captured sound. After the gunshots and reviewing her camera footage, she called the police. On her camera, she saw someone fleeing the scene though did not see this in person. She walked to Alvin Street to talk to the police afterwards and related what she saw, speaking specifically with Captain Arnold Terrazas. Her son downloaded video footage of the incident and provided it to the police. During her testimony, clips of this video footage were played. Eden testified that the noise heard on one clip was the gunshot and that the noise heard on the second clip was the second gunshot. She also testified that someone can be seen running away in the top right corner of the second clip.

Captain Terrazas, with the El Campo Police Department (ECPD), testified that he was dispatched to Alvin Street on the evening of February 23. He was the second officer to arrive and assisted ECPD Sergeant Nathan Kubesch. Upon arrival, Captain Terrazas observed a 2017 Toyota Corolla that had crashed into the garage apartment and an individual slumped over in the driver's seat. The person was non-responsive and had a gunshot wound in the back of his head. Sergeant Kubesch called EMS and Captain Terrazas secured the scene with him. They also called an investigator. Captain Terrazas testified that Sergeant Kubesch seized weapons inside the Toyota including a rifle, handgun, and revolver. After the investigator and other officers arrived, Captain Terrazas was dispatched to a second location, where Garcia was found with a gunshot wound in

4

his right hand.

Captain Terrazas also testified and authenticated body camera footage that he started recording upon his initial arrival on the scene, as well as State's exhibits 36–98, which were still photos from his body camera footage. He described the footage and photos of him arriving on the scene and seeing Sergeant Kubesch at the Toyota attempting to speak with the victim. He identified Jaramillo and spoke with her after the incident. He also testified that Singleton was transported away from the scene to the hospital by EMS. Captain Terrazas also spoke with Eden and identified her in his footage. He further testified regarding the weapons identified in the footage, including the rifle, revolver, and handgun. He testified that the revolver was recovered from the victim's right hand. Captain Terrazas also testified regarding the body camera footage that was recorded when he responded to the second location. The footage depicts him arriving at the scene and helping secure the residence along with already present officers. Three females are seen and heard saying that they do not have the gun. Garcia was present sitting on the floor and was transported to the hospital for treatment.

During cross-examination, Captain Terrazas testified that the officers initially thought Singleton's wound was self-inflicted due to finding him with a revolver in his hand. He also admitted that there was a discrepancy between his written report and body camera footage regarding when they identified Singleton and when they spoke to certain witnesses. He testified that the presence of a spent round in the revolver indicated it had been fired. He could not recall whether the handgun or revolver was jammed.

Sergeant Kubesch testified that on February 23, he responded to a call regarding a firearm being shot and was first to arrive at the scene. He spoke with Jaramillo briefly

5

and then observed a black car that had hit the apartment garage, and that the car's back passenger door was open. He approached the vehicle and saw Singleton slumped over in the driver's seat, still breathing, with blood on the back of his head. After determining the victim had a traumatic brain injury, Sergeant Kubesch did not attempt first-aid and instead called EMS. He testified that he secured the scene which included finding a .22 revolver in the victim's hand, a .22 rifle in the back seat driver's side, and a 9-millimeter handgun on the passenger seat floorboard. He testified that the rifle had one round in the chamber when recovered and that it was dimpled, indicating that the round never went off after trying to be fired. However, he could not verify if the rifle had specifically been shot that night. The rifle and round were brought live to the trial and identified. He also testified that the handgun was jammed. After reviewing his report, he testified that the handgun had five live rounds in it. The revolver also had five live rounds, and one spent round.

Sergeant Kubsech authenticated his body camera footage and still photos from the footage. He testified regarding recovery of a DVR player from the scene that was found in a sewer on Avenue D across from the subject property. Blood was found on the DVR, which was sampled. He also testified regarding items obtained from within the vehicle, including a wallet containing money, an AR magazine, magazines for several other types of firearms, and an iPhone. Sergeant Kubesch believed all of these belonged to Singleton since they were found in Singleton's vehicle.

Detective David Howard testified that he was an investigating detective called to the scene on February 23. He searched the area of the scene and found a DVR recording device in a storm drain in Avenue D. He determined it had been recently placed there

6

because it did not have debris or mud on it. The wiring indicated it had been jerked loose from somewhere. He authenticated photos depicting where the DVR was recovered. He also testified regarding his interview with Garcia at El Campo Memorial Hospital and authenticated photos of Garcia's gunshot wound. Detective Howard verified that Garcia provided information of value to the investigation.

Captain Ryan Schaer testified regarding his role as the lead investigator in the case. He was also dispatched to Alvin Street on the evening of February 23. Upon his arrival on scene, he spoke with Captain Terrazas and Sergeant Kubesch before observing the area. He saw a black Toyota crashed into a garage apartment and noticed lots of blood inside the vehicle. He also observed the house itself, and that three security cameras were posted on the front of the house, the side of the house, and the wooden rail. He authenticated State's exhibits 219–320 as photos depicting the incident house and area. Captain Schaer also testified regarding recovery of the black DVR in the sewer across the street from the incident house. He authenticated State's exhibits 341–349 which were photos indicating that the DVR had been attached to connectors inside the subject residence, and photos that indicated Quinonez lived at that residence.

After speaking with Detective Howard, based on Howard's interview with Garcia, Detective Schaer developed a list of six suspects that included appellant, Drew, Garcia, Lott, Dayton, and Ortiz. He authenticated photos of each suspect and testified that these photos were recovered from the discarded DVR that appeared to have been plugged in at Drew's residence. He also testified that he received a photo from Lieutenant Ariel Surterra that helped identify appellant because it showed his face and a specific two-tone blue jacket he was wearing, and it depicted him with a black AR-15 rifle that had no butt

stock. Captain Schaer also testified regarding stills obtained from camera footage of an earlier robbery on February 21 at the same property committed by the same group. These stills showed appellant wielding the same AR-15, and also depicted Drew, Garcia, Lott, Dayton, and Ortiz. He described how the stills depicted appellant, Garcia, and Dayton escorting the first robbery victim, "CJ," down the stairs of the Alvin Street property. The stills also depict Dayton carrying a .22 rifle that was consistent with the rifle recovered from the scene of Singleton's murder. He further testified regarding photos showing the same group going to meet Singleton later in the day and photos depicting Drew meeting Singleton in the driveway at Alvin Street with the same AR that appellant was carrying in earlier photos. Captain Schaer testified regarding video camera footage of the driveway at Alvin Street showing Garcia's hand being shot by Singleton and Singleton's car moving forward and crashing into the garage. Captain Schaer believed Singleton shot first.

Captain Schaer further discussed his interview with Ortiz wherein Ortiz identified all of the same individuals as participating in the robbery and murder of Singleton. Ortiz also told Captain Schaer regarding the same group of individuals committing a robbery of "CJ" earlier on the same day. Ortiz identified the group in the nighttime videos at Alvin Street as well. Captain Schaer testified regarding the inventory of items recovered from Singleton's car, including a spent .22 shell casing and a .22 rifle that was consistent with the casing. He also testified regarding test rounds fired from the .22 rifle and the bullet recovered from Singleton's autopsy. He further testified recovering camera footage from Eden's camera and from another individual, Ben Cockrell.[1] Captain Schaer ultimately sought an arrest warrant for appellant based on the interview with Garcia, his interview

---

[1] Footage from Cockrell's camera depicts two members of the group looking into a truck in Cockrell's driveway around the time of Singleton's shooting.

with Ortiz, the social media photos obtained, and the DVR footage.

On cross-examination, Captain Schaer described that numerous areas of Singleton's vehicle were swabbed for fingerprints and blood and hair were taken for DNA samples. He also swabbed various parts of the rifle and handgun for fingerprints. He testified regarding the various types of ammunition found in Singleton's trunk that belonged to Singleton. Captain Schaer agreed that the police could not determine if the second round in the rifle was damaged from a misfire or if the round was already damaged.

Janelle Holts, owner of the incident property, testified that she rented the property to Drew in February 2021. She authenticated a rental contract that showed Drew rented the property month to month starting in September 2020.

Victoria Gusman, a Wharton resident, testified that she messaged the Wharton Police Department (WPD) on Facebook on February 23 regarding seeing a video on Instagram Live showing who she thought were the suspects in the El Campo shooting after seeing the WPD post a picture of appellant. Through her testimony, she authenticated screenshots of her messages that included a different photo depicting appellant with money and an AR-15, which she gave to the police.

Ortiz testified, subject to an immunity agreement, that he was an accomplice of appellant and the others. He identified appellant in the courtroom and testified that he was friends with appellant for about a year prior to February 23, 2021. He also testified that he often hung out with appellant, Drew, and Dayton. He was familiar with the Alvin Street residence and went there "every other day" in the time leading up to the incident. He identified himself and the other members of the group on the various video stills and

9

photos the State had previously shown at trial. Ortiz testified that there was a .22 rifle, an AR-15, and a handgun inside the house, and that the AR-15 was the same one that appellant is seen holding in the various photos. Ortiz learned about the robbery of "CJ" from appellant and the others on February 23 as they were talking about the robbery when he came to the residence. He testified that he and the others would commonly come and go from the house when they hung out.

Later in the evening on February 23, Ortiz was present when Drew called Singleton and discussed selling him the AR-15. After the call, a member of the group proposed that they rob Singleton at gunpoint. All members of the group, including appellant, agreed. Ortiz knew Singleton because he had previously sold a pistol to Singleton through Drew. Singleton eventually arrived and Drew went to the vehicle with the AR-15. Ortiz identified Drew next to Singleton's vehicle on the camera footage. After Drew went outside, appellant, armed with a .22 rifle, and Garcia, armed with a handgun, went outside to Singleton's vehicle and pointed their guns at Singleton. Ortiz identified both of them on the camera footage as well. Finally, Ortiz, Dayton, and Lott exited to go to the car and take Singleton's property. Ortiz identified all of them doing this on the camera footage. He also testified that he was the one who took the social media photo of appellant with the AR-15.

Ortiz testified that, at some point, appellant got in the backseat of the car. Then, a struggle occurred where Drew was in the passenger seat tussling with Singleton, and Garcia was on the driver's side hitting Singleton. Ortiz heard two gunshots, one right after the other. After the first gunshot, Ortiz ran to the stairs and grabbed his belongings and started to flee the scene. At this time, he heard Garcia say he was shot. When Ortiz was

10

back outside, the others were running around and appellant said "He's dead. What do I do?" About an hour or two later at a different house, appellant told Ortiz that he shot Singleton in the back of the head after he saw Singleton reaching for his revolver. Ortiz then left town with Lott, appellant, and his sister. He returned to town about a week later and was arrested.

On cross-examination, Ortiz testified that the group intended to rob Singleton, but he was not sure if anyone in the group intended to shoot Singleton if he resisted. He agreed that appellant never specifically stated he wanted to do more than rob Singleton.

Dr. Long Jin, an assistant medical examiner and forensic pathologist with the Harris County Institute of Forensic Science, testified regarding his conclusions based on his review of Singleton's autopsy report. He did not perform the autopsy himself. He described that Singleton had a gunshot wound on the back right side of his head and there was no exit wound. The autopsy pathologist retrieved a bullet from the left front lobe of the brain. There was no soot or stippling on the wound, meaning the shot likely occurred from further back than two feet. Due to this, Dr. Jin concluded that Singleton's death was due to homicide.

David Curtiss, a firearm examiner and forensics analyst for the Corpus Christi Police Department (CCPD), testified that he examined the casing recovered form the back of Singleton's Toyota and compared it with test-fired casings. Based on examination of the .22 rifle, the tested casings, and the recovered casing, he determined that the casing recovered from the backseat of Singleton's Toyota was fired by the .22 rifle.

Howard Singleton, Singleton's father, testified that he spoke with Singleton on the phone on the evening of February 23, 2021. Singleton told him he was going to a friend's

house to look at a rifle for sale. Singleton mentioned Quinonez was the person he was going to meet. Howard also verified that his son was the individual in the autopsy photos.

On March 4, 2024, the parties' counsel delivered their closing statements. In appellant counsel's closing statement, his theory of the case and defense was that appellant lacked the intent to commit capital murder because he was following the leadership of others and was coming to the defense of his friends. He argued that appellant might not have been in the backseat of the vehicle, that he would not have had room to fire the rifle in the backseat and thus was backing away from Singleton when he shot, demonstrating a lack of intent. He also argued that the murder was no longer during the commission of a robbery at the moment the struggle in the Toyota ended. There was further argument regarding the lack of proper investigation by the police and that Ortiz's testimony could not be trusted. The jury returned a guilty verdict on March 4, 2024, finding appellant guilty of capital murder as described above and sentencing him to life in prison. *See id.*

This appeal followed.

## II. ANALYSIS

Appellant asserts two issues on appeal both of which could be independent grounds for reversal. We examine each in turn.

### A. Sufficiency of the Evidence

By his first issue, appellant challenges the sufficiency of the evidence supporting his conviction. However, despite briefing his challenge as one issue and blending his arguments, appellant in fact asserts two distinct challenges to the sufficiency of the evidence. First, he asserts his conviction cannot be sustained pursuant to the accomplice

witness rule. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14. Second, he asserts a general legal insufficiency challenge. The State argues this renders appellant's first point of error multifarious and that it should be accordingly denied.

A complaint is multifarious when "it is based on more than one legal theory and raises more than one specific complaint." *Prihoda v. State*, 352 S.W.3d 796, 801 (Tex. App.—San Antonio 2011, pet. ref'd); *see also Boswell v. State*, Nos. 13-11-00785-CR, 13-11-00786, 13-11-00791-CR, 2015 WL 5655823, at *1 n.2 (Tex. App.—Corpus Christi–Edinburg Sept. 24, 2015, pet. ref'd) (mem. op., not designated for publication). "As an appellate court, we may refuse to review a multifarious issue or we may elect to consider the issue if we are able to determine, with reasonable certainty, the alleged error about which the complaint is made." *Prihoda*, 352 S.W.3d at 801. Asserting both legal sufficiency and the accomplice-witness rule as a single point of error is considered multifarious. *See, e.g.*, *Vasquez v. State*, 67 S.W.3d 229, 236 (Tex. Crim. App. 2002).

We agree that appellant's first point of error is multifarious. However, in the interests of justice, and following prior courts' precedent, we can examine these two issues separately due to their distinguishable legal standards and elect to do so. *See Vasquez*, 67 S.W.3d at 236; *see also Druery v. State*, 225 S.W.3d 491, 498–99 (Tex. Crim. App. 2007).

### 1.    Accomplice-Witness Rule

Appellant argues that under the accomplice-witness rule, Ortiz's testimony had to have been corroborated by other evidence. The accomplice-witness rule states that "[a] conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the

13

corroboration is not sufficient if it merely shows the commission of the offense." TEX. CODE CRIM. PROC. ANN. art. 38.14. This rule "reflects 'a legislative determination that accomplice testimony implicating another person should be viewed with a measure of caution, because accomplices often have incentives to lie, such as to avoid punishment or shift blame to another person.'" *Zamora v. State*, 411 S.W.3d 504, 509–10 (Tex. Crim. App. 2013) (quoting *Blake v. State*, 971 S.W.2d 451, 454 (Tex. Crim. App. 1998)). A witness can be considered an accomplice either in fact or in law. *Ash v. State*, 533 S.W.3d 878, 884 (Tex. Crim. App. 2017). Trial courts have no duty to instruct the jury that a witness is an accomplice witness as a matter of law unless there is no doubt the witness is an accomplice. *Druery*, 225 S.W.3d 491 at 498.

A witness is an accomplice as a matter of law if charged with the same offense as the defendant, a lesser-included offense, or if there is clear evidence that the witness is an accomplice. *Patterson v. State*, 606 S.W.3d 3, 29 (Tex. App.—Corpus Christi–Edinburg 2020, pet. ref'd). "One who participates with the defendant before, during, or after the commission of the crime and acts with the required culpable mental state for the crime is an accomplice." *Id.* (citing *Ash*, 533 S.W.3d at 884). It is not enough to be merely present at the crime scene or be aware of the crime to be considered an accomplice. *Id.*

For non-accomplice evidence to connect the defendant to the offense, "the evidence must simply link the accused in some way to the commission of the crime and show that rational jurors could conclude that this evidence sufficiently tended to connect [the accused] to the offense." *Simmons v. State*, 282 S.W.3d 5045, 508 (Tex. Crim. App. 2009) (quoting *Malone v. State*, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008)). We consider the combined force of all the non-accomplice evidence with the accomplice

testimony eliminated from our consideration. *Washington v. State*, 449 S.W.3d 555, 562 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (citing *Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011)). If there are two permissible views of the evidence—one that connects the accused to the offense and one that does not—we defer to the jury's determination. *Id.*

"Proof that the accused was at or near the scene of the crime at or about the time of its commission, when coupled with other suspicious circumstances, may tend to connect the accused to the crime so as to furnish sufficient corroboration to support a conviction." *Brown v. State*, 672 S.W.2d 487, 489 (Tex. Crim. App. 1984). The corroborating evidence alone does not need to prove guilt beyond a reasonable doubt to uphold the conviction. *Washington*, 449 S.W.3d at 562. "[E]vidence that the defendant was in the presence of an accomplice at or near the time or place of the crime is proper corroborating evidence." *De La Fuente v. State*, 432 S.W.3d 415, 421 (Tex. App.—San Antonio 2014, pet. ref'd).

It is undisputed that the trial court instructed the jury regarding the accomplice-witness rule and instructed them to consider Ortiz an accomplice witness. Appellant contends that the evidence was insufficient to convict him absent Ortiz's testimony. We disagree.

The jury found appellant guilty of the crime of capital murder while in the course of committing robbery. TEX. PENAL CODE ANN. § 19.03(a)(2). Therefore, the evidence must show that appellant intentionally or knowingly caused the death of Singleton while in course of attempting to commit theft of property from Singleton and obtained or maintained control of that property while either intentionally, knowingly, or recklessly

causing bodily injury to him or placing him in fear of imminent bodily injury or death. *See id.* §§ 19.03(a)(2), 19.02, 29.02. Even disregarding Ortiz's testimony as we are required to do, the record is replete with evidence connecting appellant to the offense. *See Washington*, 449 S.W.3d at 562.

There is a bevy of physical evidence that places appellant at the crime scene outside of Ortiz's testimony. There are multiple videos and photos that depict appellant at the Alvin Street property during the time of Singleton's shooting and show him there in the hours preceding the shooting, including participating in the prior alleged robbery of "CJ." Captain Schaer, in concert with Detective Howard and using the photo obtained from Lieutenant Surterra, identified appellant by the specific jacket he was wearing in this footage and testified he was the individual who is seen in the video footage walking to Singleton's car with the .22 rifle and approaching the backseat. Gusman's testimony regarding the photo of appellant with the same AR-15 rifle later recovered at the scene of Singleton's murder also supports that appellant was involved in the robbery scheme and was present at the scene. This evidence that appellant was present at the scene with the murder weapon is sufficient alone to corroborate Ortiz's testimony. *See Brown*, 672 S.W.2d at 489; *De La Fuente*, 432 S.W.3d at 421.

However, the jury also heard other evidence that linked appellant to the crime scene. Jaramillo's testimony helped corroborate that multiple individuals were present at the subject property and that multiple gunshots were heard. Likewise, Eden testified similarly and provided camera footage that showed an individual fleeing the scene of the crime and provided audio of gunshots at the property. Cockrell testified regarding his camera footage that further indicated that appellant's group was at the property around

16

the time of the shooting. Holts testified and confirmed that Drew, a member of the group, was renting the property. Howard Singleton also testified that Singleton was present at the property to purchase a gun from Drew, further corroborating the armed robbery narrative. The jury was free to believe that the combined weight of all this testimony and physical evidence placed appellant at the crime scene, and we must defer to the jury's determinations. *Simmons*, 282 S.W.3d at 508; *Washington*, 449 S.W.3d at 562; *Brown*, 672 S.W.2d at 489.

Further, Dr. Jin and Curtiss provided testimony that Singleton was killed by a bullet from the .22 rifle recovered from the backseat of Singleton's car and that the bullet was shot at a distance greater than two feet. This physical evidence, combined with the video footage depicting appellant carrying the .22 rifle, also provided evidence that appellant was the individual that shot Singleton in the back of the head and that he did so when sitting in the back of Singleton's car. While appellant's counsel pointed to other evidence to suggest that appellant was backing away or lacked intent to commit murder, the jury was free to, instead, infer intent from the circumstances surrounding the shooting.

Appellant asserts in a conclusory manner that the non-accomplice evidence does not show that he had the motive and opportunity to commit capital murder. While appellant does not explain this argument, simply based on his long form copy-and-paste of a portion of Ortiz's testimony, it appears appellant is arguing that Ortiz's testimony is the only evidence of appellant's motive and opportunity to commit capital murder and that, without such evidence, his conviction cannot stand. Ignoring that motive is not an element of the offense, appellant misunderstands the nature of the accomplice-witness rule as Ortiz's testimony may still be considered as evidence for appellant's motive and opportunity so

17

long as other evidence links appellant "in some way to the commission of the crime" and rational jurors could have concluded there was sufficient evidence to corroborate a conviction. *See Simmons*, 282 S.W.3d at 508.

Accordingly, we overrule the first part of appellant's first issue.

### 2. Legal Sufficiency

Next, appellant argues that the evidence is legally insufficient to support his conviction. Each essential element of a criminal offense must be supported by legally sufficient evidence that the State proved beyond a reasonable doubt. *Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011). We determine the essential elements by examining the hypothetically correct jury charge which should:

(1) Accurately set out the law;

(2) Be authorized by the indictment;

(3) Not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability; and

(4) Adequately describe the particular offense for which defendant was tried.

*Dunham v. State*, 666 S.W.3d 477, 482 (Tex. Crim. App. 2023). "This list is 'not necessarily exhaustive.'" *Id.* (quoting *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000)).

"To determine whether this standard has been met, we review all the evidence in the light most favorable to the verdict and decide whether a rational factfinder could have found the essential elements of the crime beyond a reasonable doubt." *Wharton v. State*, 711 S.W.3d 92, 101–02 (Tex. App.—Houston [14th Dist.] 2024, pet. ref'd). This includes both properly and improperly admitted evidence. *Id.* We defer to the factfinder's

resolutions of conflicting evidence including the credibility and weight they assign to it. *Id.* "When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict, and we defer to that determination." *Dunham*, 666 S.W.3d at 482.

"Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Further, circumstantial evidence is equally probative as direct evidence and circumstantial evidence alone is "sufficient to establish guilt." *Id.* We treat direct evidence and circumstantial evidence equally on appellate review. *Dunham*, 666 S.W.3d at 482 (quoting *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)).

Appellant's argument under the legal sufficiency standard is even more conclusory than the prior argument, as he fails entirely to explain how the evidence was insufficient or lacking. *See* Tex. R. App. P. 38.1(i). Reviewing the evidence in the light most favorable to the verdict, including both properly and improperly admitted evidence, we determine that the jury had sufficient evidence to support conviction. *See Wharton*, 711 S.W.3d at 101–02. Under this review, we can even consider Ortiz's accomplice-witness testimony in our sufficiency analysis. *Id.*

As appellant himself concedes, Ortiz's testimony provided ample evidence regarding appellant's motive and opportunity to commit the murder, detailing how all the accomplices arrived at the scene, their intent to rob the victim, and how the shooting between the various persons present began. His testimony alone is legally sufficient to

support conviction as it addressed all elements of the offense and the jury was free to believe this testimony in its entirety. *See id.*

But in addition to Ortiz's testimony is all of the above-described evidence that corroborated Ortiz's testimony. In review of the entire record, the jury had a plethora of evidence from which they could determine that appellant intentionally participated in the armed robbery of Singleton, was present at the scene with the .22 rifle that was used to shoot Singleton, and had intent to murder Singleton when appellant pointed the rifle at the back of Singleton's head and pulled the trigger. *See id.* The cumulating force of all this evidence, when viewed in the light most favorable to the verdict, is legally sufficient to support conviction. *See id.*; *Dunham*, 666 S.W.3d at 482; *Hooper*, 214 S.W.3d at 13.

We therefore overrule the second part of appellant's first issue.

## B. Admission of Testimony Regarding Relationship between Singleton and Appellant

Appellant next argues that the trial court improperly excluded testimony regarding the relationship between appellant and Singleton, which he contends was admissible pursuant to Texas Code of Criminal Procedure Article 38.36(a). TEX. CODE CRIM. PROC. ANN. art. 38.36(a). He also argues that the excluded evidence was admissible under Rule 404(b) as it pertained to motive. *See* TEX. R. EVID. 404(b).

### 1. Standard of Review and Applicable Law

To preserve a complaint for appellate review, the record must demonstrate a timely request or motion was made to the trial court that the trial court either ruled on or refused to rule on. TEX. R. APP. P. 33.1(a)(1)–(2). Under Texas law, all relevant evidence is generally admissible. *See* TEX. R. EVID. 402. However, the trial court may exclude even

relevant evidence if its probative value is substantially outweighed by danger of unfair prejudice or if it is needlessly cumulative. *See id*. R. 403.

> In all prosecutions for murder, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the offense.

TEX. CODE CRIM. PROC. ANN. art. 38.36(a). However, the admissibility of Article 38.36(a) evidence can still be limited by Texas Rules of Evidence 403 and 404. *See Garcia v. State*, 201 S.W.3d 695, 703 (Tex. Crim. App. 2006). The nature of a relationship between victim and defendant (such as whether they were married, estranged, coworkers, friends, etc.) is clearly admissible under Article 38.36(a), but past acts of violence or other crimes between victim and defendant may be admissible depending on the issues in the case and the purpose for which the evidence is offered. *See id*. Texas Rule of Evidence 404(b) allows admission of a person's crime, wrong, or other act if used to prove motive. TEX. R. EVID. 404(b). And "[o]ne well-established rationale for admitting evidence of uncharged misconduct is to rebut a defensive issue that negates one of the elements of the offense." *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). A defendant must do more than merely deny commission of an offense to introduce evidence in this manner. *Id*. Conversely, evidence offered to prove bad character and conduct in conformity with bad character is excluded. *Id*.

We apply "an abuse of discretion standard of review when reviewing a trial court's ruling on the admission of evidence." *Matew v. State*, 655 S.W.3d 291, 300 (Tex. App.— Corpus Christi–Edinburg 2022, pet. denied). Specifically, rulings on admissibility of extraneous offenses are also subject to an abuse of discretion review. *De La Paz*, 279

21

S.W.3d at 343. There is an abuse of discretion when the trial court's decision is outside the zone of reasonable disagreement. *Matew*, 655 S.W.3d at 300 (quoting *Casey v. State*, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007)).

### 2. Discussion

Appellant argues that the relationship between himself and Singleton was a material issue at trial. Specifically, he argues that the nature of their relationship was relevant to why Singleton was present at the scene before the murder and as to the evidence secured from Singleton's vehicle. Thus, he asserts that the trial court improperly excluded "car inventory evidence and the previous relationship incidents" that were admissible to explain the circumstances surrounding the death.

In directing this Court to the complained-of excluded evidence, appellant partially cites to the pretrial hearing regarding the State's motion in limine asking for evidence referring to the victim's "drug use, drug dealings, or posting on social media about drugs" to be excluded. The trial court granted the State's motion. However, pretrial rulings on motions in limine do not preserve a complaint for appellate review. *Thomas v. State*, 137 S.W.3d 792, 796 (Tex. App.—Waco 2004, no pet.) (citing *Geuder v. State*, 115 S.W.3d 11, 14–15 (Tex. Crim. App. 2003)); *Humphries v. State*, No. 09-17-00104-CR, 2019 WL 610402, at *5 (Tex. App.—Beaumont Feb. 13, 2019, no pet.) (mem. op., not designated for publication). After a motion in limine is violated, "counsel must obtain an adverse ruling to preserve the complaint." *Thomas*, 137 S.W.3d at 796. Therefore, the pretrial hearing that appellant cites is not relevant to appellate review and any complaint arising out of such ruling is waived to the extent appellant did not object at trial. *See* Tex. R. App. P. 33.1(a)(1)–(2).

Appellant also directs this Court to the trial record where appellant sought to enter testimony regarding the drug items recovered from Singleton's vehicle including bags of marijuana. Specifically, he wanted testimony from Sergeant Kubesch regarding inventorying multiple drug items found in Singleton's trunk. During trial, appellant argued this evidence was admissible because there would be testimony that the reason appellant and the accomplices robbed the victim was due to purchasing drugs from him in the past. The trial court excluded the evidence. This appears to be the source of appellant's argument under Article 38.36(a). *See* TEX. CODE CRIM. PROC. ANN. art. 38.36(a). Appellant also argued that the presence of the drugs in the vehicle would help demonstrate that Singleton was a felon illegally in possession of a firearm and thus not entitled to self-defense. Appellant contends this was admissible pursuant to Rule 404(b). *See* TEX. R. EVID. 404(b).

The root flaw of appellant's arguments is that appellant fails to argue or explain the relevance of Singleton's alleged drug possession to appellant's defenses to the offense of capital murder. It is highly questionable whether evidence regarding the drugs recovered from Singleton's vehicle and "inventoried" could be considered evidence of a prior relationship. *See* TEX. CODE CRIM. PROC. ANN. art. 38.36(a). Regardless, even if construed as evidence of a past relationship, appellant did not argue why this is relevant or probative to his defense. We cannot discern any probative value of this "relationship" evidence based on our review of the record. Singleton's drug possession or appellant's possible past purchase of drugs from him does not make any fact relating to whether appellant was guilty of capital murder more or less likely. The facts regarding the scheme of appellant and the accomplices to rob the victim of his firearms, the resulting shootout,

23

and ensuing death, are all well-established in the record outside of any "relationship" evidence and appellant does not argue he was denied the ability to argue any defense due to this evidence being excluded.

Appellant also fails to explain the relevance of whether Singleton was a felon illegally in possession of a firearm. Appellant did not assert as a defense at trial that he should not be convicted because Singleton possessed drugs and thus was not entitled to have a firearm in his own self-defense. Therefore, the trial court was within its discretion to determine this excluded evidence is nothing more than an attempt by appellant to show the victim's bad character and attack his reputation, which is not a permissible reason for admission of evidence under Rule 404. *See De La Paz*, 279 S.W.3d at 343.

Finally, appellant has not demonstrated how the exclusion of this evidence, even if error, was harmful.[2] Non-constitutional errors in criminal cases that do "not affect substantial rights must be disregarded." TEX. R. APP. P. 44.2(b). Typically, error from the exclusion of evidence is non-constitutional. *Hollaway v. State*, 446 S.W.3d 847, 857 (Tex. App—Texarkana 2014, no pet.). "Substantial rights are not affected if we, based on the record as a whole, have a fair assurance that the erroneous exclusion of evidence had either no influence or only a slight influence on the jury." *Id.* at 858.

Appellant argues in a conclusory manner that the limitations placed on the trial testimony by the trial court's ruling was "not harmless" but fails to explain how or why there would have been a different outcome if the excluded evidence was admitted. Based on our review of the record, we cannot conclude that the exclusion of the complained-of

---

[2] Appellant also argues that he has no burden to demonstrate harm but cites inapplicable law regarding error in the jury charge that is not relevant precedent regarding the error appellant asserts here. *See Warner v. State*, 245 S.W.3d 458, 461–62 (Tex. Crim. App. 2009) (holding, pursuant to *Almanza v. State*, that there is no burden to prove harm in the jury charge error context).

testimony influenced the jury's verdict. *Id.* As described above, there is substantial evidence supporting the jury's verdict. We do not see, and appellant fails to argue, how evidence that Singleton's vehicle had drugs inside it or that appellant and his accomplices decided to target the victim for robbery would cause any different outcome. In fact, the evidence adduced at trial established that appellant and the others targeted Singleton due to purchasing guns from him in the past, not drugs. Singleton's alleged drug use or drug possession is not one of the elements for the appellant's offense and is not relevant to any of appellant's defenses or theories. Appellant's closing and defense theories were predicated on challenging whether appellant had the requisite intent for capital murder, which Singleton's alleged drug possession does not relate to.

Accordingly, any error from exclusion of this testimony is harmless and must be disregarded. *See* TEX. R. APP. P. 44.2(b). We overrule appellant's second issue.

### III.   CONCLUSION

We affirm the trial court's judgment.

YSMAEL D. FONSECA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
21st day of August, 2025.

25